STATE OF NORTH CAROLINA v. BARRY MICHAEL HARVELL AND
CHRISTOPHER EUGENE INGOLD

No. 318A92

(Filed 30 July 1993)

1. **Evidence and Witnesses § 758 (NCI4th) — opinion testimony — inference from defendant's remark — admission not prejudicial — other testimony**

There was no prejudice in a murder prosecution from the testimony of a guard that defendant Harvell had said something which indicated that he was planning to shoot a woman where the guard could not remember what defendant had said but there was other strong and unequivocal evidence of direct threats against a woman by defendant while he was in her presence and armed with a firearm. N.C.G.S. § 8C-1, Rule 701.

**Am Jur 2d, Criminal Law §§ 985-987.**

2. **Constitutional Law § 309 (NCI4th) — murder — closing argument that evidence closest to proving voluntary manslaughter — not ineffective assistance of counsel**

A murder defendant was not deprived of the effective assistance of counsel where his counsel argued without his consent that, if the evidence tended to establish the commission of any crime, that crime was voluntary manslaughter. This was not the equivalent of admitting that the defendant was guilty of any crime.

**Am Jur 2d, Appeal and Error §§ 772 et seq.**

**Adequacy of defense counsel's representation of criminal client regarding argument. 6 ALR4th 16.**

3. **Criminal Law § 442 (NCI4th) — murder — prosecutor's opening and closing argument — role of jury — not grossly improper**

A prosecutor's remarks in the opening and closing arguments of a murder prosecution were not grossly improper where the trial was held in Stanly County but defendants were from Montgomery County and one defendant contended that the prosecutor impermissibly chose to frame the case as Stanly County against Montgomery County and appealed to the passions, prejudices, and fears of the jury. It is well

settled that a prosecutor's remarks reminding the jury that it is acting as the voice and conscience of the community are proper, the prosecutor did not emphasize the fact that the defendants were from Montgomery County, and the prosecutor's argument was a hyperbolic expression of the State's position that a not guilty verdict would be an injustice in light of the evidence of guilt. Defendant failed to object at trial and there was no gross impropriety.

**Am Jur 2d, Trial §§ 225 et seq.**

4. **Criminal Law § 794 (NCI4th)— murder—acting in concert— requested instructions not given—not supported by evidence**

The trial court did not err by refusing to give defendant Ingold's requested instructions on acting in concert in a murder prosecution where the evidence, if believed, would only support a determination that the killing was done pursuant to a common purpose and would not support a reasonable finding that the killing was an independent act by defendant Harvell not done pursuant to a common purpose shared with defendant Ingold.

**Am Jur 2d, Trial § 723.**

5. **Criminal Law § 794 (NCI4th)— murder—acting in concert— requested instructions on presence not given—not supported by evidence**

The trial court correctly refused defendant Ingold's requested instruction on mere presence in a murder prosecution where the evidence did not support the instruction. Evidence that Ingold said "we're going to finish it" and followed close behind defendant Harvell armed with a steel pipe as Harvell walked into the group with a shotgun tended to show that Ingold made it known to Harvell that he was standing by willing to lend any assistance necessary.

**Am Jur 2d, Trial § 723.**

6. **Criminal Law § 775 (NCI4th)— murder—acting in concert— requested instruction on voluntary intoxication refused—no error**

The trial court did not err in a first-degree murder prosecution by not giving defendant Ingold's requested instruction on voluntary intoxication where defendant was charged with

**STATE v. HARVELL**

[334 N.C. 356 (1993)]

first-degree murder, the court instructed on voluntary intoxication, and defendant was convicted of second-degree murder. Voluntary intoxication does not relieve a defendant altogether from criminal responsibility, but it may negate the element of specific intent. The conviction of second-degree murder is precisely the verdict to which the defendant Ingold was entitled if the jury determined that he did not form a specific intent to kill after premeditation and deliberation due to his intoxication. A defendant's voluntary intoxication, even if established, will not prevent a determination that he acted in concert with another.

**Am Jur 2d, Trial § 743.**

Appeal by the defendants from judgments entered by Helms, J., on 4 March 1992, in Superior Court, Stanly County. Heard in the Supreme Court on 12 May 1993.

*Michael F. Easley, Attorney General, by Mary Jill Ledford, for the State.*

*J. Kirk Osborn for the defendant-appellant Barry Michael Harvell.*

*Ernest H. Morton for the defendant-appellant Christopher Eugene Ingold.*

MITCHELL, Justice.

The two defendants, Barry Michael Harvell and Christopher Eugene Ingold, were indicted for first-degree murder. Their cases were joined for trial at the 10 February 1992 Criminal Session of Superior Court, Stanly County. The jury found the defendant Ingold guilty of second-degree murder, and the trial court entered judgment sentencing him to imprisonment for twenty years. The jury found the defendant Harvell guilty of first-degree murder. At the conclusion of a separate capital sentencing proceeding, pursuant to N.C.G.S. § 15A-2000, the jury recommended that Harvell receive a sentence of imprisonment for life, and the trial court entered judgment accordingly. The defendant Harvell appealed to this Court as a matter of right pursuant to N.C.G.S. § 7A-27(a). The defendant Ingold appealed the judgment against him to the Court of Appeals; his motion to bypass the Court of Appeals with regard to his appeal was allowed by this Court on 16 November 1992.

STATE v. HARVELL

[334 N.C. 356 (1993)]

The evidence introduced at trial tended to show, *inter alia*, the following. On 9 June 1991, the defendants Christopher Ingold and Barry Harvell drove with Gary Hamilton to Badin Lake in Stanly County. Upon arriving at Badin Lake, the three men sat at a picnic table where they drank beer and engaged in conversation with a group at the next picnic table. An argument broke out between the defendant Harvell and members of the group at the next picnic table. At some point in the argument, someone at the other picnic table indicated that he had a gun. The defendant Ingold and Gary Hamilton then drove to Tony Laton's home to get a gun. Laton gave the two men his twelve-gauge shotgun, and they returned to Badin Lake.

Shortly after Ingold and Hamilton returned to Badin Lake, a fight started between the defendant Harvell and one of the men in the group at the other picnic table. Harvell was cut on the leg with a knife during the fight. Another man from the other group approached Hamilton and hit him in the face. These events lasted approximately one minute and ended when the men in the other group drove away in their vehicles.

Hamilton saw the defendants Harvell and Ingold walking in the direction that the other men had gone. Harvell was carrying a shotgun, and Ingold was carrying a wooden post. Hamilton got into his truck and picked up Harvell and Ingold. Hamilton had driven around the "pier area" several times when Harvell ordered him to stop. Harvell and Ingold got out of the truck and walked toward a group of people in the "pier area." Harvell was still carrying the shotgun. Ingold no longer had the wooden post but was carrying a steel pipe. Harvell passed a security guard, Mary Smith, who tried to stop him from going to the lake, telling him that she had called the sheriff. In response, the defendant Harvell stated, "I don't give a damn who's coming. The bitch started it and I'm going to finish it." Approaching the group in the "pier area," Harvell aimed the shotgun at Dena Durham, but her boyfriend, Dean Russell, pushed her aside. Harvell then fired the shotgun, literally blowing off the top of Dean Russell's head and killing him. Harvell fired two more shots, but no one else was hit. When Harvell shot Dean Russell, the defendant Ingold was standing close behind Harvell and holding the steel pipe in a raised position. Following the killing, Harvell and Ingold jumped back into Hamilton's truck and went to Tony Laton's home where they were subsequently arrested.

**STATE v. HARVELL**

[334 N.C. 356 (1993)]

Other evidence introduced at trial is discussed at other points in this opinion where pertinent to the issues raised by the defendants.

## APPEAL OF THE DEFENDANT BARRY MICHAEL HARVELL

[1] By an assignment of error, the defendant Harvell contends that the trial court erred by admitting the improper opinion testimony of the security guard, Mary Smith. Smith testified that Harvell "said something else to me that indicated to me that he was planning to shoot a woman." However, when Smith was asked what the defendant had said to her in this regard, she answered, "I don't remember what he said." The defendant contends that the admission of Smith's opinion testimony violated Rule 701 of the North Carolina Rules of Evidence which provides, in pertinent part, that opinion testimony of a lay witness or testimony as to an inference by a lay witness is allowed where the witness's opinion or inference is "rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C.G.S. § 8C-1, Rule 701 (1988). Assuming *arguendo* that the admission of this part of Smith's testimony violated Rule 701, we conclude that the error was harmless.

A defendant is prejudiced by errors arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at trial. N.C.G.S. § 15A-1443(a) (1988). Smith had already testified that the defendant Harvell, while armed with a shotgun, had expressly stated to her that "the bitch started it and I'm going to finish it." Additionally, the testimony of eyewitness Patricia Long tended to show that as the defendant Harvell approached the victim and the victim's girlfriend with the shotgun in his hand, Harvell said, "bitch, you started it and I'm going to finish it." In light of such strong and unequivocal evidence of direct threats against a woman, made by the defendant while she was in his presence and he was armed with a firearm, we conclude that there is no reasonable possibility that the testimony complained of in this assignment affected the result reached by the jury at trial. Therefore, any error in the admission of this testimony was harmless. *Id.; see State v. Fields*, 315 N.C. 191, 200, 337 S.E.2d 518, 524 (1991) (evidence that a defendant was carrying a gun supported an inference that he anticipated a confrontation and gave some forethought to how he would deal with the situation). This assignment of error is without merit.

## STATE v. HARVELL

[334 N.C. 356 (1993)]

**[2]** By another assignment of error, the defendant Harvell contends that his trial counsel, without his consent or authorization, argued that the jury should find him guilty of voluntary manslaughter, thus depriving him of his constitutional right to the effective assistance of counsel. During closing arguments, his counsel argued that the defendant Harvell was not guilty of first or second-degree murder. His counsel then stated, "I submit to you that based upon the evidence presented in terms of a criminal offense, that the one that most closely — or the one that is most closely kind [sic] to this is the offense of voluntary manslaughter, that being there was provocation." At issue in this case is whether the defendant's trial counsel admitted to the jury that the defendant Harvell was guilty of voluntary manslaughter.

In *State v. Harbison*, 315 N.C. 175, 180, 337 S.E.2d 504, 507-08 (1985), *cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986), we held that a defendant has been denied effective assistance of counsel if his counsel admits his guilt to the jury without his consent. We have also held that an argument that the defendant is innocent of all charges, but if he is found guilty of any of the charges it should be of a lesser crime because the evidence came closer to proving that crime than any of the greater crimes charged, is not an admission that the defendant is guilty of anything, and the rule of *Harbison* does not apply. *State v. Greene*, 332 N.C. 565, 572, 422 S.E.2d 730, 733-34 (1992). In the present case, the defendant's counsel never conceded that the defendant was guilty of any crime. He merely noted that if the evidence tended to establish the commission of any crime, that crime was voluntary manslaughter. This was not the equivalent of admitting that the defendant was guilty of any crime. Accordingly, this assignment of error is without merit.

**[3]** By another assignment of error, the defendant Harvell contends that the trial court erred in permitting the prosecutor to make improper and prejudicial remarks during his opening statement and his closing argument to the jury. The defendant argues that the prosecutor's opening and closing remarks contained statements tending to inflame the jury.

As a general proposition, counsel is allowed wide latitude in jury arguments. *State v. Soyars*, 332 N.C. 47, 418 S.E.2d 480 (1992). Counsel is permitted to argue facts supported by evidence which has been presented, as well as reasonable inferences which can

be drawn therefrom. *State v. Williams*, 317 N.C. 474, 346 S.E.2d 405 (1986). Where, as here, a party fails to object to an opening statement or closing argument, our review is limited to determining whether the remarks were so grossly improper as to require the trial court's intervention *ex mero motu*. *State v. Craig*, 308 N.C. 446, 457, 302 S.E.2d 740, 747, *cert. denied*, 464 U.S. 908, 78 L. Ed. 2d 247 (1983). The standard of review is one of "gross impropriety." *Id.* In the present case, the defendant argues that two portions of the prosecutor's opening statement and closing argument were grossly improper. We will address each of the defendant's contentions individually.

During his opening statement to the jury, the prosecutor made the following remarks:

> A warm Sunday afternoon here in Stanly County, Dean Russell and some of his friends decided to go to Badin Lake. . . . Unbeknownst to Dean Russell and the group in which he was a part, three men from Montgomery County, Gary Hamilton and the two defendants, Mr. Ingold and Mr. Harvell, were also going to Badin Lake that same day.

During his closing argument, the prosecutor made the following remarks:

> I ask, ladies and gentlemen, that by your verdict you do justice. I ask that by your verdict you do justice not only to yourselves, but to Stanly County as well, because as jurors in this case with your verdict you act and speak as the representative of your community. That is your function. I ask, ladies and gentlemen, that by your verdict you draw a line, and ask that you draw that line between Stanly County and these men here and find them guilty of first-degree murder.

The defendant contends that the prosecutor impermissibly chose to frame this case as one of Stanly County against Montgomery County and, thereby, improperly appealed to the passions and prejudices of the jury. It is well settled that a prosecutor's remarks reminding the jury that, for purposes of the defendant's trial, it is acting as the voice and conscience of the community are proper. *State v. Soyars*, 332 N.C. 47, 418 S.E.2d 480 (1992); *State v. Scott*, 314 N.C. 309, 333 S.E.2d 296 (1985). In addition, the prosecutor did not emphasize the fact that the defendants in this case were from Montgomery County; he mentioned this fact on only one isolated

occasion. We conclude that there was no gross impropriety involved in such remarks.

The defendant next contends in support of this assignment that the following argument of the prosecutor was grossly improper because it appealed to the passions, prejudices and fears of the jury:

> Let's end this with a correct verdict. Let's do what we can to heal what I regard as a wound, not just to Dean Russell, but a wound that's been inflicted upon Stanly, and its a wound, ladies and gentlemen, that without your verdict speaking the truth, its a wound that's going to fester. Its going to fester.

In *State v. Pittman*, 332 N.C. 244, 262, 420 S.E.2d 437, 447 (1992), the prosecutor stated that if the defendant was found not guilty, "justice in Halifax County will be dead." We held that this argument was not improper because it was a hyperbolic expression of the State's position that a not guilty verdict, in light of the evidence of guilt, would be an injustice. *Id.* Similarly, the prosecutor's statement here was a hyperbolic expression of the State's position that a not guilty verdict would be an injustice in light of the evidence of guilt. There was no gross impropriety.

For the foregoing reasons, we conclude that the remarks of the prosecutor which are the subject of this assignment of error were not grossly improper. Accordingly, this assignment of error is overruled.

APPEAL OF THE DEFENDANT CHRISTOPHER INGOLD

[4] By an assignment of error, the defendant Ingold contends that the trial court erred in refusing to give the jury his requested instructions on the law of acting in concert. The defendant requested the following instructions:

> For example, if defendants A and B formed a common plan to kill a particular person X, and defendant A shoots and kills that person, then Defendant B, if he is present, is also guilty of the killing. Similarly, if pursuant to the common plan to kill X, defendant A attempts to shoot and kill X but accidentally kills another person Y, then defendant B is also guilty of the killing since it was a natural or probable consequence of the common plan to kill X. If, however, defendants A and B form a common plan to kill X, but defendant A, acting independently and not in pursuance of the common plan to

kill X, shoots and kills person Y, then defendant B, even if he is present, is not guilty of the killing, since the killing of Y was not in pursuance of the common plan to kill X, nor was it a natural or probable consequence of the common plan to kill X.

Accordingly, even if you find that Chris Ingold and Barry Harvell joined in a common plan to assault or kill any of the particular persons they had argued with at the picnic area, yet you cannot convict him for the killing of the victim since that killing was an independent act and was not in pursuance of the common plan or a natural or probable consequence thereof. You may only convict Chris Ingold if you find that he and Barry Harvell joined in a common plan to kill the victim or his girlfriend.

The trial court denied the defendant's request and, instead, gave the pattern jury instruction on acting in concert. N.C.P.I.—Crim. 202.10 (1971).

If a request is made for a jury instruction which is correct in itself and supported by evidence, the trial court must give the instruction at least in substance. *State v. Lamb*, 321 N.C. 633, 644, 365 S.E.2d 600, 606 (1988); *State v. Hooker*, 243 N.C. 429, 431, 90 S.E.2d 690, 691 (1956). It has long been established that

if two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof.

*State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991) (quoting *State v. Westbrook*, 279 N.C. 18, 41-42, 181 S.E.2d 572, 586 (1971), *death sentence vacated*, 408 U.S. 939, 33 L. Ed. 2d 761 (1972) ). *Accord State v. Joyner*, 297 N.C. 349, 255 S.E.2d 390 (1979). *But see State v. Reese*, 319 N.C. 110, 141-42, 353 S.E.2d 352, 370 (1987). However, even if it is assumed *arguendo* that the requested instruction here contained no misstatements of law, we conclude that it was not supported by the evidence.

The evidence in this case tended to show that after arriving at Badin Lake, Gary Hamilton and the defendants Harvell and Ingold drank beer and began socializing with a group at a nearby

picnic table. Shortly thereafter, an argument started between Harvell and members of the group at the other picnic table. Someone at the other picnic table indicated that he had a gun, so Hamilton and the defendant Ingold left the lake and went to Tony Laton's home for a gun. Laton gave the two men his twelve-gauge shotgun and they returned to the lake. Shortly after their return, a fight started between the defendant Harvell and one of the men in the group at the other picnic table. During the fight, Harvell was cut on the leg with a knife. Another man from the other group approached Hamilton and punched him in the face. After this altercation ended, the men in the other group drove away in their vehicles.

Hamilton got into his truck and picked up Harvell and Ingold who had started walking in the direction that the other men had gone. Harvell was carrying a shotgun and Ingold was carrying a wooden post. Hamilton had driven around the "pier area" at the lake several times when Harvell ordered him to stop. Harvell and Ingold got out of the truck and walked toward a group of people engaged in recreational activities in the "pier area" near the lake. Harvell was still carrying the shotgun, but Ingold was now carrying a steel pipe. When asked what was going on, the defendant Ingold told Jimmy Love that "they started it and we're going to finish it." The defendant Harvell made similar statements. After the two armed defendants walked together into the crowd, Harvell aimed the shotgun at Dena Durham, but her boyfriend, Dean Russell, pushed her aside. Harvell fired the shotgun blowing off the top of Dean Russell's head. Harvell fired two more shots which struck no one. Throughout the time during which Harvell shot Dean Russell and fired the two additional shots, the defendant Ingold was standing close to Harvell and holding the steel pipe in a raised position.

The defendant Ingold contends that the evidence in this case would support a reasonable finding that the killing of Dean Russell was the independent act of Harvell and unrelated to any common purpose shared by Ingold. We do not agree. Instead, the evidence, if believed, would only support a determination that the killing of Dean Russell was done pursuant to a common purpose. All of the evidence, if believed, tended to show that after the initial confrontation at the picnic tables, Harvell and the defendant Ingold armed themselves with deadly weapons and went together to the "pier area." In Ingold's presence, Harvell told the security guard who tried to stop him from going armed with the shotgun into

the group of people in the "pier area" that he did not care that she had called the sheriff. As he held the shotgun, he stated that the "bitch started it and I'm going to finish it." When Jimmy Love asked the defendant Ingold what was going on, he stated that "they started it and we're going to finish it." Harvell, closely followed by Ingold who was armed with the steel pipe, then entered the crowd and told Dena Durham, the victim's girlfriend, that he was going to "finish it." The victim, Dean Russell, pushed Durham aside, and Harvell shot and killed him. The strikingly similar statements of the two defendants that they were "going to finish it" and the concerted actions that they undertook while together immediately prior to and after the killing tended to show unequivocally that the defendants Ingold and Harvell had formed a joint purpose to commit the very crime committed. The evidence was to the effect that as the defendant Harvell exited Hamilton's truck and walked into the crowd with the shotgun and killed the victim, the defendant Ingold stayed close behind him armed with a steel pipe and ready to assist Harvell if necessary. If the defendant Ingold did not intend to participate in the shooting Harvell was about to engage in, Ingold could have stayed in the truck or left the scene as Harvell entered the crowd. In light of the foregoing, we conclude that the evidence introduced in the trial court would not support a reasonable finding that the killing of Dean Russell was an independent act by Harvell not done pursuant to a common purpose shared with the defendant Ingold. The trial court did not err in refusing to give the requested jury instructions. Accordingly, this assignment of error is without merit.

[5] By another assignment of error, the defendant Ingold contends that the trial court erred in refusing to give the jury his requested instruction pertaining to "mere presence." The defendant requested the following instruction:

> Under the theory known as acting in concert, if two persons join in a common purpose to commit a particular crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common plan, that is, the common plan to commit a particular crime, or as a natural or probable consequence thereof. *However, the mere presence of a person at the scene of a crime at the time of its commission does not make him guilty of the offense*; nor does the mere knowledge

that an offense is about to be committed or is being committed or has been committed; nor does the failure to give an alarm.

(Emphasis added). Instead, the trial court gave the jury the appropriate pattern jury instruction concerning the principle of acting in concert. N.C.P.I.—Crim. 202.10 (1971). The defendant Ingold contends that the trial court erred by failing to include an instruction on mere presence because the evidence fully supported such an instruction.

We conclude, for reasons more fully discussed under the preceding assignment of error, that the trial court did not err because the evidence did not support an instruction on "mere presence." The evidence in the present case was that when Jimmy Love asked the defendant Ingold what was going on, Ingold stated that "we're going to finish it." As the defendant Harvell walked into the group near the lake with a shotgun in his hand, the defendant Ingold followed close behind him armed with a steel pipe. Such evidence tended to show that as Harvell approached and shot the victim, Ingold made it known to Harvell that Ingold was standing by willing to lend any assistance necessary. No evidence tended to show that the defendant Ingold was merely present at the scene of the killing. Therefore, the trial court correctly declined to instruct the jury on mere presence. Accordingly, this assignment of error is overruled.

[6] By another assignment of error, the defendant Ingold contends that the trial court erred in refusing to give the jury a requested instruction pertaining to the "defense" of voluntary intoxication. Here, the defendant was charged with first-degree murder. The evidence before the trial court was sufficient to require an instruction on voluntary intoxication, and the trial court gave such an instruction. *See generally State v. Mash*, 323 N.C. 339, 372 S.E.2d 532 (1988) (clarifying rule to be applied in determining whether trial court must instruct on voluntary intoxication).

While voluntary intoxication does not relieve a defendant altogether from criminal responsibility, it may negate the element of specific intent in those crimes in which such an element must be proved. *State v. Silvers*, 323 N.C. 646, 374 S.E.2d 858 (1989). If by reason of voluntary intoxication a defendant did not form a specific intent to kill after premeditation and deliberation, an essential element of first-degree murder is absent and the offense is reduced to second-degree murder. *State v. McLaughlin*, 286 N.C.

STATE v. HARVELL

[334 N.C. 356 (1993)]

597, 213 S.E.2d 238, *vacated in part on other grounds*, 428 U.S. 903, 49 L. Ed. 2d 1208 (1976); *State v. Bunn*, 283 N.C. 444, 196 S.E.2d 777 (1973). However, the law does not require any "specific intent" for a defendant to be guilty of second-degree murder, and a defendant's voluntary intoxication does not negate that crime. *State v. Snyder*, 311 N.C. 391, 317 S.E.2d 394 (1984); *State v. Caudle*, 58 N.C. App. 89, 293 S.E.2d 205 (1982), *cert. denied*, 308 N.C. 545, 304 S.E.2d 239 (1983).

The jury in the present case, having first been properly instructed as to the foregoing principles, declined to convict the defendant of first-degree murder and convicted him of the lesser-included offense of second-degree murder. This is precisely the verdict to which the defendant Ingold was entitled, if the jury determined that due to his voluntary intoxication he did not form a specific intent to kill after premeditation and deliberation.

The defendant Ingold argues, however, that the trial court should have instructed the jury that it must find the defendant not guilty of any crime if it found that due to his voluntary intoxication he did not join in a "common purpose" with his co-defendant Harvell. Ingold argues that he could not be guilty of any crime on the theory of "acting in concert" unless he could join his co-defendant in such a common purpose. This argument is without merit. The "defense" of voluntary intoxication applies, at most, only to negate the "specific intent" element of a *crime* which includes such an element. *State v. Jones*, 300 N.C. 363, 365, 266 S.E.2d 586, 587 (1980). The "acting in concert" principle merely provides one among the several alternative theories upon which a defendant may be found guilty of any criminal act; it is not a crime in and of itself. *See State v. Thomas*, 325 N.C. 583, 593, 386 S.E.2d 555, 560-61 (1989). Therefore, a defendant's voluntary intoxication, even if established, will not prevent a determination that he acted in concert with another. For the foregoing reasons, this assignment of error is without merit.

Having considered all of the assignments of both defendants, we conclude that the defendants received a fair trial free of prejudicial error.

No error.