IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-654

Filed 19 November 2025

Johnston County, Nos. 22CR000117-500, 22CR050182-500

STATE OF NORTH CAROLINA

v.

JAMES MATTHEW DEAN, Defendant.

Appeal by Defendant from judgment entered 20 October 2023 by Judge Rebecca W. Holt in Johnston County Superior Court. Heard in the Court of Appeals 30 January 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Grace R. Linthicum, for the State-Appellee.*

*Blass Law, PLLC, by Attorney Danielle Blass, for the Defendant-Appellant*

STADING, Judge.

James Matthew Dean ("Defendant") appeals from final judgment entered upon a jury verdict convicting him of possession with intent to manufacture, sell, or deliver methamphetamine, and possession of drug paraphernalia. After careful review, we discern no error.

## I. Background

On 13 January 2022, Sergeant Joseph Wheeler of the Smithfield Police Department saw a red Ford Explorer leaving the Village Motor Lodge at a rapid pace.

Sergeant Wheeler relayed his observations to Officer Jennifer LeCrone of the Smithfield Police Department. Officer LeCrone noticed the Explorer "traveling at a high rate of speed." Upon checking the vehicle's registration, she discovered it had expired. Officer LeCrone also discovered the registrant, later determined to be the driver—who was Defendant, had an outstanding order for his arrest.

Officer LeCrone activated her patrol car's emergency equipment and the Explorer pulled over. She approached the vehicle and informed Defendant of the reason for the stop and observed that he acted "slightly nervous." Sergeant Wheeler arrived on the scene and spoke with Defendant. Sergeant Wheeler instructed Defendant to exit the vehicle; Defendant complied and remained cooperative.

Officer LeCrone handcuffed Defendant for the outstanding order for arrest. Sergeant Wheeler conducted a search of Defendant's person, locating a digital scale, approximately $1,253 in U.S. currency, and plastic bags containing a "crystalline material." Officer LeCrone searched Defendant's vehicle, discovering several "little corner baggies" and "a small bag of green leafy substance."

On 7 February 2022, the Johnston County Grand Jury returned a true bill of indictment against Defendant for possession with intent to manufacture, sell, or deliver methamphetamine; possession of marijuana up to one-half ounce; possession of drug paraphernalia; and having attained habitual felon status. On 3 May 2023, the State learned Defendant sought to introduce expert testimony about the drug testing and thereafter moved to exclude the testimony, alleging a violation of North

Carolina's criminal discovery statutes. The trial court denied the State's motion to exclude the expert's testimony on 12 June 2023, and Defendant's trial began.

During the State's case-in-chief, the trial court accepted the State's tender of Ms. Korinthia Mills, a forensic scientist with the North Carolina State Crime Laboratory, as an expert in drug chemistry. Ms. Mills testified the crystal-like substance found on Defendant's person was methamphetamine. She also explained that methamphetamine exists as two isomers commonly designated as D and L, which have "the same chemical formula, but . . . how the pieces are put together are a little different." Ms. Mills recalled she performed a preliminary color test and a Fourier Transfer Infrared Spectrophotometer ("FTIR") test, both of which indicated the presence of methamphetamine but did not differentiate between isomers. She elaborated, both isomers yield the same color-test result (turning orange) and produce identical FTIR graphs.

The defense offered the testimony of an expert witness, Edward Brown, a Doctor of Philosophy in chemistry. Dr. Brown testified that methamphetamine exists in two isomer forms—D-isomer (or "D-methamphetamine") and L-isomer (or "L-methamphetamine"). He stated, while both isomers have the same melting and boiling points and appear identical, they have different effects on the body. Dr. Brown noted, neither the color test nor the FTIR test "differentiate between the D isomer and L isomer."

Defendant moved to dismiss all charges at the close of the State's evidence. With respect to the possession with intent to manufacture, sell, or deliver methamphetamine charge, Defendant argued the State had not proven which isomer was present, and that one of the isomers was not illegal. The trial court granted Defendant's motion with respect to the possession of marijuana charge for insufficient evidence, otherwise it denied Defendant's motion. Again, Defendant moved to dismiss the remaining charges at the close of all evidence. The trial court denied Defendant's motion. Defendant then requested special jury instructions, stating:

1. Methamphetamine-D is a controlled dangerous substance under Chapter 90 of North Carolina General Statutes.

2. Methamphetamine-L is not a controlled dangerous substance under Chapter 90 of North Carolina General Statues.

3. State v. Ward requires the State to prove the existence of a Controlled Dangerous Substance by using some form of Scientifically valid chemical analysis.

The trial court denied Defendant's request and used the relevant pattern instructions:

Now, the defendant has been charged with possessing methamphetamine with the intent to sell or deliver it. For you to find the defendant guilty of this offense the State must prove two things beyond a reasonable doubt:

First, that the defendant knowingly possessed methamphetamine.

Methamphetamine is a controlled substance. A person possesses methamphetamine when the person is aware of

its presence, and has both the power and intent to control
the disposition or use of that substance.

And second, that the defendant intended to sell or deliver
the methamphetamine.

The jury found Defendant guilty of possession with intent to sell or deliver methamphetamine, and possession of drug paraphernalia. Additionally, the jury found Defendant had attained habitual felon status. Defendant entered a defective written notice of appeal and thus petitioned our Court for a writ of certiorari ("PWC").

## II.   Jurisdiction

Defendant's written notice of appeal was defective since it failed to designate "the court to which the appeal was taken," and "it omitted the habitual felon file number." It therefore failed to comply with our Rules of Appellate Procedure. *See* N.C. R. App. P. 4. Notwithstanding, for the reasons below, we grant Defendant's PWC. N.C. R. App. P. 21(a)(1); N.C. Gen. Stat. § 7A-32 (2023).

A PWC is a "prerogative writ." N.C. Gen. Stat. § 7A-32. "It is intended as an extraordinary remedial writ to correct errors of law." *Cryan v. Nat'l Council of Young Men's Christian Ass'ns of U.S.*, 384 N.C. 569, 572, 887 S.E.2d 848, 851 (2023) (citation omitted); *see also State v. Diaz-Tomas*, 382 N.C. 640, 651–52, 888 S.E.2d 368, 377 (2022) (noting a writ of certiorari is "an *extraordinary* remedial writ," and the necessity to provide "sufficient cause" to support the petition). "Our precedent establishes a two-factor test to assess whether certiorari review by an appellate court is appropriate. First, a writ of certiorari should issue only if the petitioner can show

'merit or that error was probably committed below.'" *Cryan*, 384 N.C. at 572, 887 S.E.2d at 851 (quoting *State v. Ricks*, 378 N.C. 737, 741, 862 S.E.2d 835, 839 (2021)). And "[s]econd, a writ of certiorari should issue only if there are 'extraordinary circumstances' to justify it." *Cryan*, 384 N.C. at 572–73, 887 S.E.2d at 851 (quoting *Moore v. Moody*, 304 N.C. 719, 720, 285 S.E.2d 811 (1982)). It is necessary that Defendant's PWC show extraordinary circumstances because, "[i]f courts issued writs of certiorari solely on the showing of some error below, it would 'render meaningless the rules governing the time and manner of noticing appeals.'" *Cryan*, 384 N.C. at 572–73, 887 S.E.2d at 851 (quoting *Ricks*, 378 N.C. at 741, 862 S.E.2d at 839). "There is no fixed list of 'extraordinary circumstances' that warrant certiorari review, . . . this factor generally requires a showing of substantial harm, considerable waste of judicial resources, or 'wide-reaching issues of justice and liberty at stake.'" *Cryan*, 384 N.C. at 573, 887 S.E.2d at 851 (citation omitted). "Ultimately, the decision to issue a writ of certiorari rests in the sound discretion of the presiding court." *Id.* (citing *Ricks*, 378 N.C. at 740, 862 S.E.2d at 838).

Here, Defendant concedes his written notice of appeal failed to comply with N.C. R. App. P. 4. Even so, Defendant's PWC complies with the standards set out in *Cryan*. 384 N.C. at 572–73, 887 S.E.2d at 851; *see also Ricks*, 378 N.C. 737, 741, 862 S.E.2d 835, 839; *see also Diaz-Tomas,* 382 N.C. at 651, 888 S.E.2d at 377. Accordingly, we grant Defendant's PWC and proceed with our review on the merits.

### III. Analysis

Defendant presents two issues on appeal. First, Defendant argues the trial court committed reversible error by declining to instruct the jury with his requested special instructions that were "correct and supported by evidence." Second, Defendant contends the trial court erred in denying his motion to dismiss the charge of possession with intent to sell and deliver methamphetamine, as the State failed "to produce evidence that the seized substance contained an illegal isomer . . . as opposed to a legal isomer." For the reasons below, we hold no error.

### A.  Special Jury Instructions

Defendant argues the trial court committed error by failing to give three special jury instructions. He was charged with possession with intent to sell and deliver methamphetamine, whereby it is unlawful for any person to "possess with intent to manufacture, sell or deliver, a controlled substance." N.C. Gen. Stat. § 90-95(a)(1) (2023). To maintain a conviction under subsection 90-95(a)(1), "the State must present evidence of the defendant's (1) possession; (2) of a controlled substance; (3) with intent to sell or deliver the controlled substance." *Id.* (citation omitted). "Methamphetamine is a controlled substance." *State v. Blagg*, 377 N.C. 482, 489, 858 S.E.2d 268, 274 (2021). Defendant challenges whether the substance located on his person was a controlled substance under subsection 90-95(a)(1) since the State's testing does not delineate between the two isomers of methamphetamine.

"We review a trial court's denial of a request for jury instructions *de novo*." *State v. Ramseur*, 226 N.C. App. 363, 373, 739 S.E.2d 599, 606 (2013) (citation omitted). "[T]o determine whether the trial court should have given the instruction requested by defendant, we first determine whether the requested instruction was both a correct statement of the law and supported by the evidence." *State v. Bowman*, 188 N.C. App. 635, 647, 656 S.E.2d 638, 648 (2008). "Requests for special jury instructions are allowable . . . if the requests are in writing." *Id.* "The purpose of an instruction is to clarify the issues for the jury and to apply the law to the facts of the case." *State v. Rogers*, 121 N.C. App. 273, 281, 465 S.E.2d 77, 82 (1996). "If a request is made for a jury instruction which is correct in itself and supported by the evidence, the trial court must give the instruction at least in substance." *State v. Harvell*, 334 N.C. 356, 364, 432 S.E.2d 125, 129 (1993).

### 1. Methamphetamine Isomers

Defendant's first two proposed instructions relied on the proposition that under N.C. Gen. Stat. § 90-90(3)(c), only one isomer of methamphetamine—D isomer—is a controlled substance under subsection 90-95(a)(1). Whether the State must discern between isomers of methamphetamine when charging the jury is an issue of first impression in our State. We thus consider whether the trial court's jury instructions complied with the North Carolina Controlled Substances Act since the State's test did not distinguish between isomers of methamphetamine. *See Bowman*, 188 N.C. App. at 647, 656 S.E.2d at 648.

"Our task in statutory interpretation is to determine the meaning that the legislature intended upon the statute's enactment." *State v. Rieger*, 267 N.C. App. 647, 649, 833 S.E.2d 699, 700–01 (2019) (citation and quotation marks omitted); *Dickson v. Rucho*, 366 N.C. 332, 339, 737 S.E.2d 362, 368 (2013) (internal quotation marks and citation omitted) ("The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent."). "The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, the spirit of the act and what the act seeks to accomplish." *Rieger*, 267 N.C. App. at 649, 833 S.E.2d at 701.

Proof that the substance at issue is a controlled substance is a requisite element for possession with intent to sell or deliver a Schedule II substance, and for sale of methamphetamine. *See State v. Bridges*, 257 N.C. App. 732, 733, 810 S.E.2d 365, 367, *review denied*, 371 N.C. 339, 813 S.E.2d 856 (2018); N.C. Gen. Stat. § 90-95(a)(1). "[T]he burden is on the State to establish the identity of any alleged controlled substance that is the basis of the prosecution." *State v. Ward*, 364 N.C. 133, 147, 694 S.E.2d 738, 747 (2010); *State v. Harris*, 361 N.C. 400, 403, 646 S.E.2d 526, 528 (2007) (citation omitted) ("To obtain a conviction for possession of a controlled substance, the State bears the burden of proving two elements beyond a reasonable doubt: (1) defendant possessed the substance; and (2) the substance was a controlled substance."). Methamphetamine is a Schedule II controlled substance.

N.C. Gen. Stat. § 90-90(3)(c) (2023). This definition includes, "its salts, isomers, and salts of isomers." *Id.*

The North Carolina Controlled Substances Act defines "isomer" to mean "the optical isomer, unless otherwise specified." N.C. Gen. Stat. § 90-87(14a) (2023); *see also* N.C. Gen. Stat. § 90-95 (noting "methamphetamine . . . and any salt, isomer, salts of isomers, compound, derivative, or preparation thereof" as "controlled substances."); *see also* N.C. Gen. Stat. § 90-90(3)(c) (noting "[a]ny material, compound, mixture, or preparation which contains any quantity of . . . Methamphetamine, including its salts, isomers, and salts of isomers."). "[O]ptical isomers are compounds with the same molecular formula but which act in opposite ways on polarized light." *State v. Ward*, 199 N.C. App. 1, 25, 681 S.E.2d 354, 371 (2009) (citation omitted).

Since our Controlled Substances Act designates the optical isomers of methamphetamine as illegal controlled substances, the plain language explicitly contemplates that both isomers of methamphetamine are controlled substances.[1] Further, we note the legislature's formulation encompassing the drug in its various possible forms, "methamphetamine, including its salts, isomers, and salts of isomers," is consistent with federal law. N.C. Gen. Stat. § 90-90(3)(c); 21 U.S.C. § 841 *et seq.*; *see also United States v. Sizemore*, No.19-4508, 2022 U.S. App. LEXIS 1586, 2022 WL

---

[1] Both isomers, D- and L-methamphetamine, are optical isomers. *See* Toshihiko Nagai et al., *Identification of Optical Isomers of Methamphetamine and Its Application to Forensic Medicine*, 46 NIHON HOIGAKU ZASSHI 244 (1992).

168439 (4th Cir. Jan. 19, 2022) ("Federal law similarly prohibits distribution of methamphetamine and its isomers. . . ."); *see also, e.g., United States v. Walls*, 1996 U.S. App. LEXIS 6588, No. 95-5466, 1996 U.S. App. LEXIS 6588, at *3 (4th Cir. Apr. 5, 1996) (applying a "mandatory minimum sentence . . . whether D-methamphetamine or L-methamphetamine is involved" since the federal statutes "make[ ] no distinction between types of methamphetamine.").

At trial, Ms. Mills testified she identified the substance through color and FTIR tests used across forensic labs. Although Defendant sought an explanation distinguishing between the isomers, the trial court correctly explained that the North Carolina General Statutes "do not specifically differentiate between L- and D-isomers," and that the pattern instructions appropriately addressed whether the substance was methamphetamine. In other words, Defendant's first requested special instruction was given *at least in substance*, and his second requested special instruction is incorrect in law. *See Harvell*, 334 N.C. at 364, 432 S.E.2d at 129 ("If a request is made for a jury instruction which is correct in itself and supported by the evidence, the trial court must give the instruction at least in substance."). We discern no error from the trial court's declination of Defendant's differentiating instructions to treat the isomers D-methamphetamine as illegal and L-methamphetamine as entirely outside the statutory scope.

## 2. Chemical Analysis

Citing the North Carolina Supreme Court's decision in *State v. Ward*, 364 N.C. 133, 147, 694 S.E.2d 738, 747 (2010), Defendant also requested a jury instruction that the State must prove the presence of a controlled substance by a "[s]cientifically valid chemical analysis." Defendant maintains the State failed to prove that he possessed a controlled substance because the State's expert, Ms. Mills, used methods that did not distinguish between the isomers of methamphetamine. *See id.* ("Nevertheless, the burden is on the State to establish the identity of any alleged controlled substance that is the basis of the prosecution. Unless the State establishes before the trial court that another method of identification is sufficient to establish the identity of the controlled substance beyond a reasonable doubt, some form of scientifically valid chemical analysis is required.").

"When instructing the jury, the trial court has the duty to, 'declare and explain the law arising on the evidence.' Although a trial judge is not required to give requested instructions verbatim, he is required to give the requested instruction at least in substance" if proper and supported by the evidence. *State v. Corn*, 307 N.C. 79, 86, 296 S.E.2d 261, 266 (1982) (citations omitted). "Moreover, the court may totally refuse instructions based on an erroneous statement of the law, or which concern issues irrelevant to the case." *State v. Agnew*, 294 N.C. 382, 395–96, 241 S.E.2d 684, 692 (1978) (citations omitted).

Defendant does not argue against the validity of the FTIR method used to test the substance. Rather, he again focuses on the test's failure to distinguish between D- and L-methamphetamine. As resolved above, the isomers of methamphetamine are encompassed by N.C. Gen. Stat. § 90-90(3)(c). The pattern jury instructions in this case directed the jury that they must be satisfied beyond a reasonable doubt as to every element of the charged offense, including the identification of a controlled substance. The trial court further instructed that the jury was the sole judge of the weight and credibility of the evidence, including testimony from both the State's and Defendant's experts. The trial court's instructions captured the essential substance of the law, and therefore it did not err in declining Defendant's specific request. *See Corn*, 307 N.C. at 86, 296 S.E.2d at 266; *see also Agnew*, 294 N.C. at 395–96, 241 S.E.2d at 692.

Even assuming error, Defendant has failed to show prejudice. We have previously held, "failure to instruct on an essential element of a crime is not structural error, reversible *per se*, but rather an error to which we may apply harmless error review." *State v. Bunch*, 196 N.C. App. 438, 444, 675 S.E.2d 103, 107 (2009). Under harmless error review, a defendant is prejudiced if there is a reasonable possibility that a different result would have been reached at trial absent the error. *See State v. Ramos*, 363 N.C. 352, 355–56, 678 S.E.2d 224, 227 (2009) (applying "reasonable possibility" of a "different result" standard to determine whether an erroneous instruction was prejudicial); *see also State v. Castaneda*, 196

N.C. App. 109, 116, 674 S.E.2d 707, 712 (2009) (citation omitted) ("[A]n error in jury instructions is prejudicial and requires a new trial only if 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.'"). "A defendant has the burden to establish prejudice." *Castaneda*, 196 N.C. App. at 116, 674 S.E.2d at 712 (citation omitted). Further, "[w]hen reviewing the instruction for error, the Court must construe it contextually. 'In determining the propriety of the trial judge's charge to the jury, the reviewing court must consider the instructions in their entirety, and not in detached fragments.'" *State v. Hartman*, 344 N.C. 445, 467, 476 S.E.2d 328, 340 (1996) (citations omitted).

As with Defendant's previous contentions, his arguments of prejudice also revolve around a distinction between isomers of methamphetamine. Having resolved this concern, viewing the instructions in their entirety, we are unable to discern how a reasonable possibility of a different result would be feasible. *See Ramos*, 363 N.C. at 355–56, 678 S.E.2d at 227; *see also Hartman*, 344 N.C. at 467, 476 S.E.2d at 340. Consequently, we hold the trial court did not err in its instructions to the jury. Those instructions adequately explained the State's burden of proving the substance was a controlled substance, and the presence of methamphetamine was proven using a scientifically valid method. *See* N.C. Gen. Stat. § 15A-1443(a) (2023) (noting that prejudice occurs "when there is a reasonable possibility that, had the error in question

not been committed, a different result would have been reached at the trial out of which the appeal arises."). Defendant's jury instruction arguments are overruled.

## B. Motion to Dismiss

Defendant next argues the trial court erred in denying his motion to dismiss the charge of possession with intent to sell or deliver methamphetamine on the ground that the State failed to present sufficient evidence of a controlled substance. Specifically, Defendant asserts the trial court committed error because the State failed to present substantial evidence of a controlled substance as determined by a scientifically valid chemical analysis. Defendant again raises the concern that the State did not differentiate between the isomers of methamphetamine.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citing *State v. McKinnon*, 306 N.C. 288, 298, 293 S.E.2d 118, 125 (1982)). "When ruling on a defendant's motion to dismiss, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense." *Id.* (citing *State v. Earnhardt*, 307 N.C. 62, 65–66, 296 S.E.2d 649, 651 (1982)); N.C. Gen. Stat. § 15A–1227 (2023).

"The offense of possession with intent to sell or deliver has the following three elements: (1) possession of a substance; (2) the substance must be a controlled substance; (3) there must be intent to sell or distribute the controlled substance." *State v. Carr*, 145 N.C. App. 335, 341, 549 S.E.2d 897, 901 (2001) (citing N.C. Gen.

Stat. § 90-95(a)(1)).  Considering the offense, substantial evidence supports the trial court's denial.  "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion."  *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002) (citation omitted).  "As to whether substantial evidence exists, the question for the trial court is not one of weight, but of the sufficiency of the evidence."  *Id.* (citation omitted).  "In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence."  *State v. Parker*, 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001) (citing *State v. Gibson*, 342 N.C. 142, 150, 463 S.E.2d 193, 199 (1995)).  "The trial court must also resolve any contradictions in the evidence in the State's favor."  *Id.* (citing *State v. Lucas*, 353 N.C. 568, 581, 548 S.E.2d 712, 721 (2001)).  "The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility."  *Id.*  "Moreover, 'circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence.'"  *Mann*, 355 N.C. at 301, 560 S.E.2d at 781 (citation omitted).

Here, Defendant challenges whether the State produced sufficient evidence of the second element of possession with intent to sell or deliver methamphetamine—that the substance possessed by Defendant was a controlled substance.  At trial, Ms. Mills testified she performed a preliminary color test and an FTIR test to determine

the substance on Defendant's person was methamphetamine. Additionally, Ms. Mills reviewed the report prepared by Defendant's expert witness: "Q . . . has your scientific opinion as the identity of that substance . . . changed at all? A. It has not. It is still identified as methamphetamine." *See* N.C. Gen. Stat. § 90-90(3)(c). When viewed in the light most favorable to the State, the evidence supports a reasonable inference that Defendant possessed a controlled substance—methamphetamine. *State v. Tucker*, 380 N.C. 234, 240, 867 S.E.2d 924, 929 (2022) (citations omitted) ("The existence of evidence that could support different inferences is not determinative of a motion to dismiss for insufficient evidence. The evidence need only be sufficient to support a reasonable inference."); *State v. Bradshaw*, 366 N.C. 90, 93, 728 S.E.2d 345, 347 (2012) ("So long as the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also permits a reasonable inference of the defendant's innocence."); *State v. Dover*, 381 N.C. 535, 548, 873 S.E.2d 267, 275 (2022) ("Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty."). The State presented substantial evidence to support a reasonable inference of Defendant's guilt, and the trial court correctly denied Defendant's motion to dismiss for insufficient evidence. *See Tucker*, 380 N.C. at 240, 867 S.E.2d at 929.

## IV. Conclusion

For the above reasons, the trial court properly refused Defendant's three requested special jury instructions and correctly denied his motion to dismiss the charge of possession with intent to sell or deliver methamphetamine.

NO ERROR.

Judges HAMPSON and FLOOD concur.