STATE OF NORTH CAROLINA v. WILLIAM HENRY ROGERS, JR.

No. COA94-797

(Filed 2 January 1996)

1. **Evidence and Witnesses § 1460 (NCI4th)— cocaine and heroin—chain of custody—sufficient**

The chain of custody was sufficient in an action arising from the sale of heroin and cocaine where there is a discrepancy as to who delivered the drugs to the detective who mailed them to the

SBI, but there is no dispute that the item delivered was the bag of drugs received from defendant.

**Am Jur 2d, Evidence §§ 946, 947.**

**2. Evidence and Witnesses § 2841 (NCI4th)— narcotics—testimony of purchaser—use of detective's notes—refreshing memory**

The trial court did not abuse its discretion in a prosecution arising from the sale of narcotics by allowing a witness to testify using a detective's notes to refresh his memory. The record in the case does not indicate that the testimony was a mere recitation of the refreshing memorandum and the testimony was therefore properly presented to the jury.

**Am Jur 2d, Criminal Law §§ 725, 961; Witnesses §§ 771-776, 790.**

**Refreshment of recollection by use of memoranda or other writings. 82 ALR2d 473.**

**3. Criminal Law § 41 (NCI4th)— heroin and cocaine—presence at sale**

The defendant was not entitled to a "mere presence" instruction in a prosecution arising from the sale of cocaine and heroin where a State's witness testified that on several occasions defendant directed the drug transactions by signalling others to obtain drugs. The evidence does not reasonably support an inference that defendant was merely present and not an active participant in the drug transactions.

**Am Jur 2d, Trial §§ 1295, 1400.**

**Modern status of rule regarding necessity of instruction on circumstantial evidence in criminal trial—State cases. 36 ALR4th 1046.**

**4. Criminal Law § 798 (NCI4th)— sale of heroin and cocaine—instructions on aiding and abetting—presence**

There was no error in a prosecution arising from the sale of cocaine and heroin where defendant contended that the jury was not given an explanation of the law regarding aiding and abetting and acting in concert but the court gave an instruction on acting in concert from the Pattern Jury Instructions, the court essentially complied with defendant's request on criminal intent, and a

STATE v. ROGERS

[121 N.C. App. 273 (1996)]

charge on presence was not required because the evidence in the record is sufficient to establish defendant's presence and participation in the various transactions.

**Am Jur 2d, Trial § 1256.**

5. **Evidence and Witnesses § 2461 (NCI4th)— sale of heroin and cocaine—witnesses testifying under allegedly defective immunity**

There was no error in a prosecution arising from the sale of cocaine and heroin where defendant argued that two of the State's witnesses testified under defective grants of immunity and that allowing those witnesses to testify prejudiced defendant and deprived him of a fair trial, but the court read to the jury one witness's agreement with the State and the other was extensively cross-examined about his belief that he was testifying under limited immunity. Additionally, the court reminded the jury during the charge that several of the witnesses had testified under immunity and that the jury should examine that testimony with great care and caution.

**Am Jur 2d, Trial §§ 1401, 1412; Witnesses §§ 146-150.**

**Prosecutor's power to grant prosecution witness immunity from prosecution. 4 ALR4th 1221.**

Appeal by defendant from judgment and commitment entered 18 November 1993 by Judge Frank R. Brown in Wilson County Superior Court. Heard in the Court of Appeals 21 March 1995.

*Attorney General Michael. F. Easley, by Assistant Attorney General Thomas B. Wood, for the State.*

*Gibbons, Cozart, Jones, Hughes, Sallenger & Taylor, by Thomas R. Sallenger, for defendant-appellant.*

McGEE, Judge.

On 8 November 1993, defendant, William Henry Rogers, Jr., was tried upon Bills of Indictment charging him with conspiracy to traffic in heroin, conspiracy to traffic in cocaine, four counts of possession of heroin with intent to sell and deliver, four counts of sale and delivery of heroin, three counts of possession of cocaine with intent to sell and deliver, three counts of sale and delivery of cocaine, and continuing criminal enterprise.

State's evidence included tape recordings of various drug transactions as well as the often conflicting testimony of Paul Parrish, a confessed drug user with a criminal record who was working for the Wilson Police Department to earn credit towards his community service obligation. Parrish testified about a number of different drug transactions he conducted for the Wilson police throughout the summer of 1992, many of which were tape recorded.

The drug transactions most pertinent to this appeal include the following. Parrish testified that on the afternoon of 16 July 1992, he met detective M. C. Raper of the Wilson Police Department at the Holiday Inn. Parrish was then wired with a tape recorder and transmitter. He went to a house on Claremont Circle attempting to trade a television provided by the police for drugs from defendant. Several men were present at the house when Parrish approached to make the exchange. Parrish and defendant allegedly discussed the drug transaction and defendant directed a man by the name of William X. to give Parrish two $50.00 bags of heroin by looking at William X. and saying, "Go." In return, Parrish put the television down on the ground beside defendant, who pointed to the television, looked at William X., nodded his head and said, "Put it in there" [indicating a red Toyota automobile].

Parrish next testified that on 4 August 1992, he had two conversations with defendant regarding the purchase of drugs. During one of the conversations, Parrish stated he walked up to defendant and said, "Hey, man, what you need?" Defendant responded, "I need money." Parrish then offered defendant $40.00 and in response, defendant looked at another man, Gerald McCray, and nodded his head. McCray went between two houses and returned with drugs.

The State also questioned Parrish about his transactions with defendant on 5 August 1992. Parrish testified the police outfitted him with a tape recorder and gave him a VCR to trade for drugs. He found defendant gambling with several individuals. Parrish advised defendant that he had a "four-headed VCR" and asked, "What will you give me for it? . . . can I pay you the twenty-five dollars I owe you, with the VCR and a bag of dope." Defendant nodded his head to an individual named Tom and told him to get the "bag of dope."

During the course of his testimony, it was discovered that Parrish was testifying from a set of notes which Detective Raper made from the transcripts of the various tape recorded conversations with defendant. Parrish stated he was using Raper's notes because his own

**STATE v. ROGERS**

[121 N.C. App. 273 (1996)]

original notes were lost and the second set of notes he made based on Raper's notes were illegible. Defense counsel objected and a voir dire hearing was held. The court denied defendant's motion to strike all of Parrish's testimony and to direct verdicts in favor of defendant, but stated it would "take under advisement" defendant's motion for a mistrial. When the jury returned to the courtroom, counsel for the defendant was allowed to thoroughly cross-examine Parrish regarding the use of these notes.

Detective Raper testified about his work with Parrish on a number of drug transactions. Raper stated that after the 16 July drug purchase, Parrish met Raper at the Holiday Inn and handed him the heroin, which Raper mailed to the State Bureau of Investigation for testing. During the drug transactions on the 4th and 5th of August, Raper testified Parrish was accompanied by Detective Taylor Gaskins of the Raleigh Police Department. After each of these transactions was completed, Raper testified Gaskins recovered the heroin from Parrish and handed it to Raper, who mailed the heroin to the SBI for testing. Detective Gaskins, called by the State as a witness, confirmed Raper's testimony. She testified that on each day she worked with Parrish, he gave her the drugs as soon as he arrived at their car, and each day they met Raper at the Holiday Inn where Gaskins turned over the heroin to Raper.

The jury found defendant guilty of feloniously conspiring to sell heroin and cocaine and guilty of possession of heroin with intent to sell and deliver and guilty of selling heroin on 16 July 1992, 4 August 1992, and 5 August 1992. The trial court sentenced defendant on 18 November 1993 to fifteen years imprisonment with a suspended sentence of ten years with probation to begin upon completion of defendant's active term with a corrected judgment entered 5 April 1994. Defendant appeals from the 18 November 1993 judgment and commitment, bringing forward six assignments of error.

## I. Chain of Custody

[1] Defendant's first two issues involve chain of custody questions related to the controlled substances which defendant purportedly sold to Parrish. Defendant contends the trial court erred in admitting the State's evidence which showed the substance collected from the 5 August 1992 drug transaction was heroin because the State "failed to establish a chain of custody from the moment the alleged heroin was purchased by the informant until the time it appeared in the courtroom." Defendant argues this failure results in there being insuf-

ficient evidence to convict defendant of the 5 August 1992 charges of possession of heroin with intent to sell and deliver and of selling heroin. Consequently, defendant contends he was prejudiced and received an unfair trial. We disagree.

There is sufficient evidence to establish that on 5 August 1992, Parrish and defendant engaged in a drug transaction with defendant constructively delivering the heroin to Parrish by directing another individual to give Parrish the drugs. On the day in question, Parrish was accompanied by Detective Gaskins who waited in Parrish's automobile while Parrish conducted the drug transaction with defendant. Gaskins testified the car was parked so that her view was obstructed and she was unable to see the drug transfer. However, Parrish provided the following testimony as to defendant's involvement:

Q. Would you tell the conversation you had with him [defendant]?

A. On August 5th?

Q. Yes, sir.

A. Like I said, I pulled up on Finch Street, walked across Powell, and Bay Bay [defendant] and Gerald and Larry Batts and Tom was [sic] playing craps. They were all sitting around playing craps.

I walked up to Bay Bay [defendant], and I asked Bay Bay [defendant], I said, "Bay Bay, I've got a four-headed VCR." I said, "[w]hat will you give me for it?" I said, "[w]ill you give me—can I pay you the twenty-five dollars I owe you, with the VCR and a bag of dope."

He nodded his head to Tom, told Tom to get the bag of dope, and Gerald went to get the VCR out of my vehicle.

Parrish then testified he returned to his car with the heroin he purchased from defendant. He and Detective Gaskins drove to the Holiday Inn where he delivered the heroin to Raper. This testimony was disputed by Gaskins who testified that Parrish returned to the car with the heroin and immediately gave the drugs to her. They then proceeded to the Holiday Inn, where Gaskins delivered the drugs to Raper.

At the Holiday Inn, both Raper and Gaskins labeled the material with the date and their initials and Raper mailed the substance to the SBI for testing. Evidence technician Roosevelt Riles testified he

received the material, placed his markings on it, and delivered it to SBI Chemist Linda Farren for analysis. Farren confirmed the materials contained the Schedule I controlled substance heroin and Schedule II controlled substance cocaine, with the total weight being less than one-tenth of a gram.

The above summary of the chain of custody of the substance Parrish obtained from defendant demonstrates an adequate chain of possession, delivery, transporting and safekeeping of the controlled substance. Even though there is a discrepancy as to whether it was Parrish or Gaskins who delivered the drugs to Raper, there is no dispute that the item delivered to Raper was the bag of drugs Parrish received from defendant. The officers who handled the drugs and the SBI technicians who analyzed the substance positively identified the exhibits and established a clear chain of identity between the substance obtained by Parrish and that which the SBI tested. This chain of custody was sufficient to prove that the test results testified to at trial were in fact the results of tests performed on the controlled substance Parrish received from defendant. Defendant's showings of "potential weak spots in the chain of custody relate then only to the weight to be given this testimony." *State v. Detter*, 298 N.C. 604, 634, 260 S.E.2d 567, 588 (1979). These assignments of error are overruled.

## II. Parrish's Testimony

[2]  Defendant next contends he was prejudiced when the court improperly allowed witness Glenn Paul Parrish to testify using Detective Chris Raper's notes to refresh his memory. Defendant argues that since the court should not have allowed Parrish's testimony using Raper's notes, the court erred by denying his motion to strike Parrish's testimony and by denying his motion for a mistrial. We disagree.

Since there are limitations to a witness's ability to recall, two doctrines have developed in the law to allow the witness to be aided in his recollections: past recollection recorded and present recollection refreshed. *State v. Smith*, 291 N.C. 505, 516, 231 S.E.2d 663, 670 (1977). "In present recollection refreshed the evidence is the testimony of the witness at trial, whereas with a past recollection recorded the evidence is the writing itself." *State v. Gibson*, 333 N.C. 29, 50, 424 S.E.2d 95, 107 (1992), *overruled on other grounds in State v. Lynch*, 334 N.C. 402, 410, 432 S.E.2d 349, 353 (1993). In *Smith*, our Supreme Court noted that "[b]ecause of the independent origin of the testimony actually elicited, the stimulation of an actual present rec-

ollection is not strictly bounded by fixed rules but, rather, is approached on a case-by-case basis looking to the peculiar facts and circumstances present." *Smith*, 291 N.C. at 516, 231 S.E.2d at 670-71. The Court went on to stress:

> [i]t is not required that the memory aid be prepared by the witness himself . . . . "If upon looking at *any* document he can so far refresh his memory as to recollect a circumstance, it is sufficient; and it makes no difference that the memorandum is not written by himself, *for it is not the memorandum that is the evidence but the recollection of the witness.*"

*Smith*, 291 N.C. at 516-17, 231 S.E.2d at 671 (quoting *Henry v. Lee*, 2 Chitty 124 (1810)). Thus, the question to be answered is not whether Parrish refreshed his recollection using Raper's notes, but "whether the spirit of the rule of present recollection refreshed has been violated by testimony which was not the product of a refreshed memory, but clearly nothing more than a recitation of the witness' notes." *Gibson*, 333 N.C. at 50, 424 S.E.2d at 107.

In *Smith*, our Supreme Court stated the rule:

> Where the testimony of the witness purports to be from his refreshed memory but is *clearly a mere recitation of the refreshing memorandum,* such testimony is not admissible as present recollection refreshed and should be excluded by the trial judge. *Where there is doubt* as to whether the witness purporting to have a refreshed recollection is indeed testifying from his own recollection, the use of such testimony is dependent upon the credibility of the witness and is a question for the jury.

*Smith*, 291 N.C. at 518, 231 S.E.2d at 671-72 (emphasis added) (citations omitted). The following exchange took place in the presence of the jury following a voir dire hearing which focused on the origin of the notes which Parrish was consulting during earlier testimony:

> Q.  Yesterday when you were testifying, regardless of whose notes you were using, were you testifying from the notes or were you testifying from your memory?
>
> A.  Basically my memory.
>
> Q. And, were you using your notes in the morning to refresh your memory?
>
> A.  Not really, basically memory, really.

Q.   In the afternoon when you were testifying using Detective Raper's notes, were they to refresh your memory?

A.   At some point, yes, sir.

Q.   And, you used the transcript some yesterday to refresh your memory, didn't you?

A.   Yes, sir.

The record in the case before us does not indicate that the testimony is "clearly a mere recitation of the refreshing memorandum." Therefore, Parrish's testimony was properly presented to the jury. The trial court, in its discretion, denied defendant's motions to strike Parrish's testimony and to declare a mistrial; and this exercise of discretion will be upheld absent a showing of abuse. *See Smith*, 291 N.C. at 518, 231 S.E.2d at 672. We find no abuse of discretion and conclude the trial court properly denied defendant's motions.

### III. Jury Instructions

[3]  Defendant contends it was prejudicial error for the trial court not to give his requested jury instructions on mere presence, aiding and abetting, and acting in concert. He argues the evidence only showed he was present during the transactions and never showed he passed the heroin directly to Parrish or any other agent and, therefore, defendant contends it is possible the jury could have concluded he was merely present during the deals. Additionally, he contends the jury was not given "a clear and accurate explanation of the law regarding aiding and abetting and acting in concert." We disagree.

It is the duty of the court to decide any legal questions and to instruct the jury on the law arising from the evidence presented at trial. *State v. Canipe*, 240 N.C. 60, 63, 81 S.E.2d 173, 176 (1954). The purpose of an instruction is to clarify the issues for the jury and to apply the law to the facts of the case. *State v. Cousin*, 292 N.C. 461, 464, 233 S.E.2d 554, 556 (1977). If a party requests special instructions, they must be in written form and submitted before the court begins the charge to the jury. *State v. Harris*, 47 N.C. App. 121, 123, 266 S.E.2d 735, 737 (1980), *cert. denied*, 305 N.C. 762, 292 S.E.2d 577 (1982). "If a request is made for a jury instruction which is correct in itself and supported by evidence, the trial court must give the instruction at least in substance." *State v. Harvell*, 334 N.C. 356, 364, 432 S.E.2d 125, 129 (1993). However, the court is not required to follow

any particular form in giving instructions to the jury. *State v. Mundy,* 265 N.C. 528, 529, 144 S.E.2d 572, 573 (1965).

The court properly declined to instruct the jury on mere presence. While we agree that defendant's presence at the scene of a crime does not make him guilty of the offense charged, we note the facts of this case indicate substantially more evidence against defendant than his mere presence at the scene of the crime. A review of the evidence demonstrates defendant actually participated in the drug transactions. State's witness, Paul Parrish, testified that on several occasions, defendant directed the drug transactions by signaling others to obtain drugs for Parrish. The evidence does not reasonably support an inference that defendant was merely present and not an active participant in the drug transactions. Therefore, defendant was not entitled to a "mere presence" instruction. *See State v. Brower,* 289 N.C. 644, 656, 224 S.E.2d 551, 560, *reconsideraton denied,* 293 N.C. 259, 243 S.E.2d 143 (1978) (where there was evidence tending to establish actual participation by defendant in a robbery, instruction on "mere presence" was not required).

**[4]** Defendant's second argument that the jury was not given an explanation of the law regarding aiding and abetting and acting in concert is without merit. Specifically, defendant requested the court instruct the jury that the State must show that defendant was "actually or constructively present at the scene of the crime and that he shared the criminal intent of the perpetrator to commit the crime."

The record discloses that during the charge to the jury, the court gave the following instruction:

> The Court instructs you that for a person to be guilty of a crime it is not necessary that he, himself, do all the acts necessary to constitute the crime. If two or more persons act together with a common purpose to possess a controlled substance with the intent to sell or deliver it, or to sell a controlled substance each of them is held responsible for the acts of the others done in the commission of possession of a controlled substance with the intent to sell and deliver, or in the sale of a controlled substance.

This language on acting in concert comes from the Pattern Jury Instructions for criminal cases and under these facts, it was a proper jury instruction. The court essentially complied with defendant's request on criminal intent when it instructed the jury that there must have "been a common purpose to possess a controlled substance with

the intent to sell or deliver it . . . ." As to the request to instruct the jury on presence at the scene of the crime, "[i]t is well settled that a charge on presence at the scene of the crime is unnecessary in a case in which the evidence shows that the defendant was actually present at the time the crime was committed." *State v. Hunt*, 339 N.C. 622, 651, 457 S.E.2d 276, 292-93 (1994), *reconsideration denied*, 339 N.C. 741, 457 S.E.2d 304 (1995). The evidence in the record before us was sufficient to establish defendant's presence and participation in the various drug transactions. Therefore, a charge on presence was not required and this assignment of error is overruled.

## IV. Immunity

[5] Defendant argues that two of the State's witnesses, Mark Rook and Gary Francis, testified at defendant's trial under defective grants of immunity. Defendant contends allowing these witnesses to testify prejudiced him and deprived him of a fair trial. We disagree.

Article 61 of the Criminal Procedure Act on witness immunity contains provisions which are safeguards to protect against unreliable witnesses who have entered into some type of arrangement with the State in exchange for their testimony. *State v. Morgan*, 60 N.C. App. 614, 617?, 299 N.C. S.E.2d 823, 826 (1983). "These safeguards are aimed at ensuring that the jury be made aware that the witness is testifying under a grant of immunity or some other arrangement." *Id.* Under these facts, it was clear to the jury that Rook and Francis believed they were testifying under some form of immunity. During Francis' testimony, the court read to the jury Francis' agreement with the State and during Rook's cross-examination, defense counsel extensively questioned Rook about his belief that he was testifying under limited immunity. Additionally, during the charge to the jury, the court reminded the jury that several of the witnesses had testified under immunity and that the jury should examine these witnesses' testimony "with great care and caution in deciding whether or not to believe it." Defendant suffered no prejudice as a result of these allegedly defective grants of immunity and we therefore overrule this assignment of error.

We hold that defendant received a fair trial free from prejudicial error.

No error.

Judges JOHNSON and COZORT concur.