STATE OF NORTH CAROLINA v. CHRISTOPHER RONALD BOWMAN, Defendant

No. COA06-1146

(Filed 19 February 2008)

## 1. Evidence— prior crimes or bad acts—sexual battery—absence of mistake of age—specific intent—sexual gratification—remoteness in time

The trial court did not abuse its discretion in a multiple aiding and abetting statutory rape, multiple taking indecent liberties with a child, and double second-degree kidnapping case by admitting a prior victim's testimony regarding defendant's prior conviction for sexual battery for an incident in 1997, because: (1) the testimony was admissible under N.C.G.S. § 8C-1, Rule 404(b) to show absence of mistake of age, specific intent for kidnapping, and an intent for sexual gratification; (2) the evidence was sufficiently similar to the present case based on the relative likeness in age between the past and present victims and also the sexually related nature of the incidents; and (3) the former incident was temporally proximate to the present one since defendant was incarcerated for a period of three years after his conviction and then relocated to another state, the passage of time only evidenced the existence of a continuing plan, the evidence showed defendant resumed the same activities as soon as possible after being released from jail and relocating to North Carolina, and the time period between these incidents was less than ten years.

## 2. Evidence— certified copies of convictions for sexual battery—plain error analysis

Although the trial court erred in a multiple aiding and abetting statutory rape, multiple taking indecent liberties with a child, and double second-degree kidnapping case by admitting into evidence under N.C.G.S. § 8C-1, Rule 404(b) certified copies of defendant's convictions for sexual battery when there was already significant testimony regarding the facts underlying his prior conviction, it did not commit plain error, because: (1) the testimony regarding the incidents which resulted in defendant's prior conviction was properly admitted under Rule 404(b); and (2) in light of this testimony and the heightened burden on defendant associated with plain error review, the admission of the certified copies of prior convictions was not so fundamental as to have led the jury to reach a different verdict than it would have otherwise reached.

**3. Evidence— victim impact testimony—no probative value during guilt phase**

The trial court erred in a multiple aiding and abetting statutory rape, multiple taking indecent liberties with a child, and double second-degree kidnapping case by admitting into evidence the alleged emotional impact on others as a result of defendant's prior misconduct, and defendant is entitled to a new trial because: (1) although a victim has the right to offer admissible evidence of the impact of the crime during sentencing, victim impact testimony has little, if any, probative value during the guilt phase of a trial; and (2) the inflammatory nature of the impact evidence, combined with the emotions displayed during each witness's testimony, created a reasonable possibility that, had the error in question not been committed, a different result would have been reached.

**4. Aiding and Abetting— statutory rape—requested instruction—knowledge of age of victims**

The trial court erred by denying defendant's requested instruction to the jury that defendant had to know the age of the victims in order to be convicted of aiding and abetting statutory rape because: (1) the mere presence of defendant at the scene of the crime is not enough to establish a defendant's culpability, and defendant's specific intent to aid the perpetrator in the commission of the crime must also be shown; (2) defendant's subjective knowledge that his actions would aid a criminal act is necessary to uphold a conviction based upon the theory of aiding and abetting; (3) if a defendant mistakenly undertook his actions based upon the belief that he was assisting a lawful endeavor, he cannot be guilty of aiding and abetting; (4) an offense that contains an element of knowledge has mistake of fact available as a defense; (5) although statutory rape is a strict liability crime, aiding and abetting statutory rape is not; and (6) defendant's requested instruction was supported by the evidence when a detective testified that defendant did not know the victims' ages and thought both girls were over the age of eighteen.

**5. Kidnapping— second-degree—instructions—defining unlawfully—plain error analysis**

The trial court did not commit plain error by failing to define the term "unlawfully" in the jury instructions for the charge of second-degree kidnapping because: (1) N.C.G.S. § 14-39 does not

require a person to know the victim is under the age of sixteen and was removed without the parent's consent in order to be convicted for the crime of second-degree kidnapping; and (2) the State must only prove the elements provided under N.C.G.S. § 14-39 since defendant was charged as a principal.

Appeal by defendant from judgments entered 27 January 2006 by Judge Laura J. Bridges in Buncombe County Superior Court. Heard in the Court of Appeals 24 April 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Belinda Smith, for the State.*

*Mark Montgomery, for defendant-appellant.*

CALABRIA, Judge.

Christopher Ronald Bowman ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of three counts of aiding and abetting statutory rape, three counts of taking indecent liberties with a child, and two counts of second-degree kidnapping. We grant defendant a new trial.

The State presented the following evidence at trial: On 18 February 2005, Stephanie B. ("Stephanie"), age fourteen, asked her mother for permission to spend the night with Rachelle D. ("Rachelle"), age fifteen. Rachelle also asked her mother if she could spend the night with Stephanie. The girls lied to their mothers in order to stay with Rachelle's boyfriend, Christopher Hall ("Hall"), age twenty-four, and his friend, Timothy Cutshaw ("Cutshaw"), age eighteen. Rachelle's mother drove the two girls to the mall where they met defendant, along with Cutshaw and Hall. Defendant drove Rachelle, Stephanie, Hall and Cutshaw ("the group") to a store where Hall purchased alcohol. Afterwards, defendant drove the group to defendant's home.

Once they arrived at defendant's home, the group watched a movie in defendant's living room and drank the alcohol that Hall had purchased. While the group was drinking, defendant sat in the kitchen and played a game on his computer. After the group depleted Hall's alcohol supply, they drank some of defendant's alcohol that was stored on top of the refrigerator in the kitchen. At some point, Stephanie and Cutshaw went into a bedroom where they had sexual intercourse. Rachelle and Hall went into another bedroom and also had intercourse.

The next morning, Rachelle called her mother from a restaurant stating that she and Stephanie were having breakfast with Stephanie's father and were going to the skating rink after they finished eating. Rachelle's mother, Kathy D. ("Kathy D.") asked Rachelle to call her when they arrived at the skating rink. When Kathy D. had not heard from Rachelle by that evening, she became worried and went to the Woodfin Police Department. When Kathy D. arrived at the police department, she received a phone call from Rachelle. After Rachelle told her mother where she was, a family friend drove to the location to pick up Rachelle and bring her back to the police department. While at the police department, Rachelle reported to her mother and a police officer that she had been with Hall and that they had been at defendant's home. When Rachelle mentioned defendant's name, the officer asked Rachelle more questions about the events that occurred at defendant's home. Based on Rachelle's account of the events, Detective James Marsh ("Detective Marsh") was sent to question Stephanie about the events described by Rachelle. After talking with Stephanie, Detective Marsh arrested defendant and transported him to the police department.

Hall, Rachelle's boyfriend, testified that on 18 February 2005, Rachelle called him and asked if he could meet her at the mall. Because he did not have a driver's license, Hall called defendant to ask for a ride to the mall. At first, defendant said no, but changed his mind after Rachelle called to ask for a ride. During his testimony, Hall admitted that he had been sexually involved with Rachelle on several occasions, including occasions at defendant's home. Two witnesses, Jessica Hobbs ("Jessica") and Daniel Kalec ("Daniel") testified that on previous occasions defendant had sexually touched them without their consent.

Defendant was charged with four counts of aiding and abetting statutory rape, four counts of taking indecent liberties with a child, and two counts of second-degree kidnapping. On 27 January 2006, a jury returned a verdict finding defendant guilty of three counts of aiding and abetting statutory rape, three counts of taking indecent liberties with a child, and two counts of second-degree kidnapping. Defendant was sentenced to eight consecutive sentences of imprisonment, with the terms being two consecutive sentences of 288 months to 355 months, followed by one term of 100 months to 129 months, followed by two terms of 29 months to 44 months, followed by three terms of 19 months to 23 months. Defendant appeals from his convictions.

On appeal, defendant argues the trial court erred in (I) instructing the jury on the crime of aiding and abetting statutory rape; (II) instructing the jury on the crime of second-degree kidnapping; (III) denying defendant's motion to question potential jurors as to whether they would be able to follow the law regarding evidence of defendant's alleged prior bad acts; (IV) admitting into evidence facts illustrating defendant engaged in sexual misconduct with Daniel; (V) admitting into evidence the alleged emotional impact upon others as a result of defendant's prior misconduct and certified copies of defendant's prior criminal convictions; and (VI) denying defendant's motion for a mistrial without first holding a hearing. Since defendant on appeal does not contest the sufficiency of the evidence regarding his conviction for taking indecent liberties with a child, we need not set out the facts and evidence surrounding this conviction.

## I. Evidence of Prior Misconduct

[1] Defendant argues the trial court erred by admitting evidence of other sexual assault crimes committed by defendant. Defendant only challenges the admission of testimony by Daniel regarding an incident that occurred in 1997. Defendant does not challenge the trial court's ruling admitting the testimony of Jessica regarding another incident that occurred in 1998.

"Evidence of other crimes or acts is inadmissible for the purpose of showing the character of the accused or for showing his propensity to act in conformity with a prior act." *State v. Bidgood,* 144 N.C. App. 267, 271, 550 S.E.2d 198, 201 (2001); N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. Gen. Stat. § 8C-1, Rule 404(b). "[Rule 404(b)] is a general rule of inclusion of such evidence, subject to an exception if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. West,* 103 N.C. App. 1, 9, 404 S.E.2d 191, 197 (1991) (citation omitted). North Carolina courts have been "markedly liberal in admitting evidence of similar sex offenses by a defendant for the purposes now enumerated in Rule 404(b) . . . ." *State v. Cotton,* 318 N.C. 663, 666, 351 S.E.2d 277, 279 (1987).

Daniel testified that in 1997, when he was fourteen years old, his mother scheduled a golf lesson for him with defendant. When he arrived at the golf shop for his lesson, defendant closed the shop,

locked the front door, and turned off the lights. Defendant escorted Daniel into the backroom under the guise of beginning the golf instruction. During the course of the lesson, defendant stood behind Daniel to show Daniel how to position his body. Defendant then touched Daniel by placing his hands under Daniel's undergarments and touching his penis. Daniel testified that defendant became sexually aroused by the incident.

The trial court ruled that this testimony was admissible under Rule 404(b) to show absence of mistake of age, specific intent in the kidnapping, and an intent for sexual gratification. We agree.

"[T]he ultimate test for determining whether [evidence of other offenses] is admissible is whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of N.C.G.S. 8C-1, Rule 403." *State v. Boyd,* 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988) (citation omitted). Our Supreme Court has stated:

> When the features of the earlier act are dissimilar from those of the offense with which the defendant is currently charged, such evidence lacks probative value. When otherwise similar offenses are distanced by significant stretches of time, commonalities become less striking, and the probative value of the analogy attaches less to the acts than to the character of the actor.

*State v. Artis,* 325 N.C. 278, 299, 384 S.E.2d 470, 481 (1989), *vacated on other grounds,* 494 U.S. 1023, 110 S.Ct. 1466, 108 L. Ed. 2d 604 (1990). Thus, "[t]he use of evidence under Rule 404(b) is guided by two constraints: 'similarity and temporal proximity.' " *Bidgood,* 144 N.C. App. at 271, 550 S.E.2d at 201 (citation omitted). In *State v. Penland,* 343 N.C. 634, 654, 472 S.E.2d 734, 745 (1996), our Supreme Court held a ten-year gap between instances of defendant's similar sexual behavior did not render them so remote in time as to negate their admissibility under Rules 403 and 404(b).

Here, the trial court decided that the prior crimes evidence was sufficiently similar to the present case.because of the relative likeness in age between the past and present victims and also the sexually related nature of the incidents. The trial court then concluded that the former incident was temporally proximate to the present because defendant was incarcerated for a period of three years after his conviction and then relocated to another state. The trial court determined that the passage of time only evidenced the exist-

ence of a continuing plan, and that defendant resumed the same activities as soon as possible after being released from jail and relocating to North Carolina.

Moreover, the trial court's admission of Daniel's testimony did not violate Rule 403 of the North Carolina Rules of Evidence. "Whether to exclude evidence under Rule 403 is a matter within the sound discretion of the trial court, and it will not be reversed absent an abuse of that discretion." *State v. Bagley*, 321 N.C. 201, 208, 362 S.E.2d 244, 248 (1987) (citation omitted). The trial court found from the evidence that the time period between defendant's prior crimes and the present incident was less than ten years. Therefore, based on the trial court's factual findings regarding the similarity and temporal proximity between the present and former incidents, defendant has failed to show any abuse of discretion. *See Penland, supra.* We conclude the trial court did not err by admitting Daniel's testimony with respect to the similar crime.

## II. Defendant's Prior Convictions

**[2]** Defendant next argues the trial court committed reversible error when it admitted into evidence certified copies of defendant's convictions for sexual battery pursuant to Rule 404(b) of the North Carolina Rules of Evidence. We disagree.

"It is well established in North Carolina that when the defendant in a criminal trial does not testify, evidence of other offenses is inadmissible if its only relevance is to show the character of the accused or his disposition to commit the offense charged." *State v. Armistead*, 54 N.C. App. 358, 359, 283 S.E.2d 162, 163 (1981) (citing *State v. McClain*, 240 N.C. 171, 81 S.E.2d 364 (1954)). However, Rule 404(b) allows for the admission of evidence of prior acts to show a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. Gen. Stat. § 8C-1, Rule 404(b).

Rule 404(b) is a rule of inclusion and defendant's prior acts should be excluded if their "only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). Where the defendant does not testify, admitting the bare fact of the defendant's prior conviction violates Rule 404(b). *State v. Wilkerson*, 356 N.C. 418, 571 S.E.2d 583 (2002) (reversing this Court's decision and adopting Judge Wynn's

dissent in *State v. Wilkerson*, 148 N.C. App. 310, 559 S.E.2d 5 (2002)); *State v. Hairston*, 156 N.C. App. 202, 576 S.E.2d 121 (2003).

Defendant relies on *State v. McCoy*, 174 N.C. App. 105, 620 S.E.2d 863 (2005), in asserting the trial court committed reversible error by admitting into evidence certified copies of defendant's conviction for sexual battery. In *McCoy*, the defendant was convicted for, *inter alia*, one count of assault inflicting serious bodily injury, two counts of assault inflicting serious injury, and two counts of assault with a deadly weapon. *Id.*, 174 N.C. App. at 108, 620 S.E.2d at 866. During trial, the State presented the testimony of a Greensboro police officer who testified to defendant's previous assault conviction seven years prior to the incidents for which defendant was on trial. *Id.*, 174 N.C. App. at 111, 620 S.E.2d at 868. The officer described the underlying facts surrounding defendant's previous assault conviction. *Id.* Following the officer's testimony, the State introduced into evidence a certified copy of defendant's conviction for assault resulting from the events the officer described. *Id.* Defendant did not testify. *Id.* This Court granted defendant a new trial and held the trial court's admission of defendant's bare conviction for assault was prejudicial error. *Id.* In holding the trial court committed prejudicial error, the Court relied on *Wilkerson, supra*, and determined *Wilkerson* was indistinguishable from *McCoy*.

In *Wilkerson*, two witnesses testified regarding the facts surrounding the defendant's prior conviction. *Wilkerson*, 148 N.C. App. at 311, 559 S.E.2d at 6. A deputy clerk then testified regarding the defendant's convictions for prior drug charges. *Id.* The defendant did not testify. *Id.* Our Supreme Court, in adopting Judge Wynn's dissent, established that, "in a criminal prosecution, the State may not introduce prior crimes evidence under Rule 404(b) by introducing the bare fact that the defendant was previously convicted of a crime . . . ." *Id.*, 148 N.C. App. at 327, 559 S.E.2d at 16. Based on Judge Wynn's dissent, the defendant was entitled to a new trial.

In the instant case, as in *Wilkerson*, multiple witnesses testified concerning the facts underlying defendant's prior convictions for sexual battery. This testimony was then followed by the admission of the bare fact of defendant's prior convictions through a separate witness, Detective James Marsh. Unlike *Wilkerson*, however, the convictions admitted in the present case concerned a sexual offense. "In cases involving sexual offenses, our courts have been liberal in construing the exceptions to the general rule that evidence that defendant committed another, separate offense is inadmissible." *State v. Hall*, 85

N.C. App. 447, 450, 355 S.E.2d 250, 252 (1987) (citation omitted). Although *Wilkerson* did not involve sexual offenses, Judge Wynn took note of our Courts' treatment of such evidence in his opinion:

> [A]dmitting the bare fact of a defendant's prior *conviction*, except in cases where our courts have recognized a categorical exception to the general rule (e.g. *admitting prior sexual offenses in select sexual offense cases . . .*), violates Rule 404(b) . . . as well as Rule 403 . . . .

*Id.*, 148 N.C. App. at 327-28, 559 S.E.2d at 16 (emphasis added).

Because of our Courts' liberal stance on evidence of similar sex offenses, there is an increased likelihood that defendant's prior convictions would be admissible under Rule 404(b). Nevertheless, determining their admissibility requires a case-by-case inquiry. *See Hall*, 85 N.C. App. at 450, 355 S.E.2d at 252 ("Whether a defendant's previous conviction for a sexual offense is pertinent in his prosecution for an independent sexual crime depends on the facts in each case, and among other things, the availability of other forms of proof.").

In *Hall*, the defendant was incarcerated for a prior conviction for assault with attempt to rape. *Id.* Two days after his release from prison he assaulted another woman. *Id.*, 85 N.C. App. at 451, 355 S.E.2d at 252. Because the victim escaped before the defendant completed the offense, the prior conviction was offered to show the defendant's intent was rape, not burglary as he contended. *Id.*, 85 N.C. App. at 450-51, 355 S.E.2d at 252. Defendant did not testify. *Id.*, 85 N.C. App. at 448, 355 S.E.2d at 251. The prior conviction was offered to establish the defendant's intent, which is admissible as a legitimate purpose under Rule 404(b). *Id.*, 85 N.C. App. at 451, 355 S.E.2d at 253.

In the case *sub judice*, however, there was substantial testimony regarding the facts underlying defendant's prior convictions for sexual battery, as well as the incidents at issue in the present case. Both Daniel and his mother testified to the events that culminated in defendant's conviction for sexual battery against Daniel. In addition, Jessica testified that when she was fifteen years old, she was best friends with defendant's teenage daughter, Kim. In November of 1998, Kim held a slumber party at defendant's house where Jessica and her friends drank alcohol. After Kim and Jessica's sisters fell asleep, Jessica changed into her pajamas and headed to the downstairs area of defendant's split level house. While Jessica was on the staircase,

defendant walked in front of her, pulled her shorts down, and proceeded to perform oral sex on her. Jessica's sister saw them on the stairs and defendant stopped touching Jessica. After these witnesses testified, the State offered into evidence defendant's bare convictions for sexual battery.

Although North Carolina is liberal in its inclusion of prior sexual offenses for 404(b) purposes, we find in the instant case there is little probative value in defendant's prior convictions for any 404(b) purpose since there was significant testimony regarding the facts underlying defendant's prior convictions. Thus, we conclude that the admission of defendant's prior convictions under Rule 404(b) was error. We now determine whether it was prejudicial and reversible error.

Despite defendant's objections to the testimony regarding the facts and incidents underlying the prior conviction, defendant failed to renew his objection when the convictions themselves were admitted at trial. Since defendant failed to object at trial, review on appeal is limited to consideration of whether the trial court's error constituted plain error. *See State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). We hold that it did not.

Plain error is applied cautiously and only in exceptional cases when

> after reviewing the entire record, it can be said the claimed error is a *"fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings . . . ."

*Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (alteration in original) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982) (footnotes omitted), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513, 103 S. Ct. 381 (1982)). Under this standard, a "defendant is entitled to a new trial only if the error was so fundamental that, absent the error, the jury probably would have reached a different result." *State v. Jones*, 355 N.C. 117, 125, 558 S.E.2d 97, 103 (2002). "In other words, the appellate court must determine that the error in question 'tilted the scales' and caused the jury to reach its verdict convicting the

STATE v. BOWMAN

[188 N.C. App. 635 (2008)]

defendant." *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986) (quoting *State v. Black*, 308 N.C. 736, 741, 303 S.E.2d 804, 806-07 (1983)). "Therefore, the test for 'plain error' places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection." *Id.*

We already have determined that the testimony regarding the incidents which resulted in defendant's prior conviction was properly admitted under Rule 404(b). In light of this testimony and the heightened burden on defendant associated with plain error review, we conclude that the admission of the certified copies of defendant's prior convictions for sexual battery was not so fundamental as to have led the jury to reach a different verdict than it would have otherwise reached. As such, the admission of defendant's prior convictions does not constitute plain and reversible error.

### III. Victim Impact Testimony

**[3]** Defendant argues the trial court erred by admitting into evidence the alleged emotional impact on others as a result of defendant's prior misconduct. We agree.

At trial, the State presented evidence from a victim of a previous crime, named Daniel. Both Daniel and his mother testified about the emotional impact upon Daniel's life from an incident that occurred in 1997. The State also presented evidence from Jessica, another victim of a previous crime, regarding the social and emotional problems she developed as a result of defendant's sexual assault. During *voir dire*, defendant objected to the admission of the victim impact testimony. The trial court overruled defendant's objection, and admitted the testimony under Rule 404(b) of the North Carolina Rules of Evidence.

"A victim has the right to offer admissible evidence of the impact of the crime, which shall be considered by the court or jury in *sentencing the defendant*." *State v. Nicholson*, 355 N.C. 1, 39, 558 S.E.2d 109, 136 (2002) (emphasis added). *See also* N.C. Gen. Stat. § 15A-833 (2005).

In this case, the purpose of Daniel's, Daniel's mother's and Jessica's testimonies was to illustrate the impact of crimes from defendant's previous convictions. Their testimony was not relevant to the issue of whether defendant committed the crimes against Rachelle and Stephanie. Because victim impact testimony has little, if any, probative value during the guilt phase of a trial, victim im-

pact testimony is only admissible during the sentencing phase. The trial court erred in admitting victim impact testimony by victims of prior crimes, and by admitting the testimony during the guilt phase of the trial.

After determining the trial court erred, we now determine whether defendant met his burden of showing prejudice. When evidence is erroneously admitted by the trial court, the defendant has the burden of showing that there is a "reasonable possibility that, had the error in question not been committed, a different result would have been reached" at trial. N.C. Gen. Stat. § 15A-1443(a) (2005).

In this case, three witnesses were allowed to testify regarding the effect of the defendant's prior bad acts. Daniel testified that after the incident with defendant, it was difficult for him to have any type of physical contact with males, including his own father. He also testified that he was constantly bombarded with thoughts of defendant and attributed his drug and alcohol problems to the incident as a means of coping. Daniel's mother testified the incident robbed her son of his innocence. Daniel's grades slipped, his interest in sports drastically declined, and Daniel's continuing struggle with drugs and alcohol was a result of the incident. The third witness, Jessica, cried during her testimony. She testified that before the incident she was an excellent student. However, after defendant assaulted her, she failed her courses and dropped out of school. She became sexually promiscuous, and struggled with alcohol abuse. Jessica further testified that as a result of the incident, she was unable to maintain healthy relationships and was involved in several life threatening accidents.

"The test for prejudicial error is whether there is a reasonable possibility that the evidence complained of contributed to the conviction . . . ." *State v. Milby*, 302 N.C. 137, 142, 273 S.E.2d 716, 720 (1981). There was nothing about the emotional impact of defendant's prior misconduct that shed light on whether defendant was guilty of the crimes charged in the present case. We conclude the inflammatory nature of the impact evidence, combined with the emotions displayed during each witness's testimony, creates a "reasonable possibility that, had the error in question not been committed, a different result would have been reached." N.C. Gen. Stat. § 15A-1443(a).

Although we conclude that defendant is entitled to a new trial on all convictions, we address defendant's remaining arguments that are likely to reoccur at defendant's new trial.

## IV. Instruction on Aiding and Abetting Statutory Rape

**[4]** Defendant argues the trial court erred by denying his request for an instruction that defendant had to know the age of the victims in order to be convicted of aiding and abetting statutory rape. We agree.

Requests for special jury instructions are allowable pursuant to N.C. Gen. Stat. § 1-181 (2005) and N.C. Gen. Stat. § 1A-1, Rule 51(b) (2005) if the requests are in writing. *See State v. Craig*, 167 N.C. App. 793, 795, 606 S.E.2d 387, 388 (2005). "The purpose of an instruction is to clarify the issues for the jury and to apply the law to the facts of the case." *State v. Rogers*, 121 N.C. App. 273, 281, 465 S.E.2d 77, 82 (1996). "If a request is made for a jury instruction which is correct in itself and supported by evidence, the trial court must give the instruction at least in substance." *State v. Harvell*, 334 N.C. 356, 364, 432 S.E.2d 125, 129 (1993).

In order to determine whether the trial court should have given the instruction requested by defendant, we first determine whether the requested instruction was both a correct statement of the law and supported by the evidence. Defendant was charged with aiding and abetting statutory rape. The State argues that the requested instruction should not have been given because aiding and abetting statutory rape is a strict liability crime. In other words, the State contends that an aider and abettor of statutory rape is vicariously liable for the actions of the principal. We disagree.

Under the theory of aiding and abetting, a defendant may be convicted of a crime when: "(i) the crime was committed by some other person; (ii) the defendant *knowingly* advised, instigated, encouraged, procured, or aided the other person to commit that crime; and (iii) the defendant's actions or statements caused or contributed to the commission of the crime by that other person." *State v. Goode*, 350 N.C. 247, 260, 512 S.E.2d 414, 422 (1999) (emphasis added). Our courts have consistently held that the mere presence of a defendant at the scene of the crime is not enough to establish the defendant's culpability. *See State v. Sanders*, 288 N.C. 285, 290, 218 S.E.2d 352, 357 (1975); *State v. Capps*, 77 N.C. App. 400, 403, 335 S.E.2d 189, 191 (1985). The defendant's intent to aid the perpetrator in the commission of the crime must also be shown. *Sanders*, 288 N.C. at 290, 218 S.E.2d at 357; *Capps*, 77 N.C. App. at 403, 335 S.E.2d at 191. The term "aid and abet" has been explained as:

> a legal term of art not commonly used . . . . It represents a legal theory under which one may be held derivatively liable as a prin-

cipal for the criminal acts of another if two elements are met. Each element, aiding and abetting, performs a function necessary to justify the imposition of criminal liability.

The "aiding" element requires some conduct by the accomplice that results in the accomplice becoming involved in the commission of a crime. The typical way in which a party becomes involved in the commission of a crime is through the assistance, promotion, encouragement, or instigation of criminal action. Once a party becomes involved in the commission of a crime, the aiding element has been met, no matter how slight the assistance. The law establishes no degree requirement to the amount of involvement required to fix liability as a principal.

The second element, "abetting," serves to supply the mental state necessary to justify the imposition of criminal liability. This requirement looks for a criminal state of mind—*specifically, it requires that the accomplice has both knowledge of the perpetrator's unlawful purpose to commit a crime, and the intent to facilitate the perpetrator's unlawful purpose.*

Thus, as in most criminal conduct, accomplice liability involves both an *actus reus* (the actual aiding) and a *mens rea* (the intent to facilitate the criminal purpose of the perpetrator).

Larry M. Lawrence, II, Comment, *Developments in California Homicide Law: VII. Accomplice Liability: Derivative Responsibility*, 36 Loy. L.A..L. Rev. 1524, 1526 (2003) (emphasis added).

Therefore, the question of defendant's intent is not limited to whether he aided the perpetrator but whether he aided with the specific intent to assist in the commission of the crime. If the defendant assisted the perpetrator but did not know that the perpetrator was committing a crime, the defendant could not have intended to aid in the commission of a crime.

North Carolina case law does not support a theory of vicarious strict liability. On the contrary, our Courts have consistently required evidence of the defendant's intent to aid in the commission of a crime even in cases where the defendant actively assisted the perpetrator. *See Evans*, 279 N.C. at 447, 183 S.E.2d at 540; *Capps*, 77 N.C. App. at 400, 335 S.E.2d at 189. *See generally State v. Barnett*, 304 N.C. 447, 463, 284 S.E.2d 298, 307 (1981) (conviction of aiding and abetting first degree sexual offense reversed because no evidence that defendant knew perpetrator had threatened victim); *State v. Sink*, 178 N.C. App.

217, 221, 631 S.E.2d 16, 19 (2006) (the State must show defendant's intent to encourage the principal to commit the crime of obtaining property by false pretenses), *disc. review denied*, 360 N.C. 581, 636 S.E.2d 195 (2006); LaFave, Wayne R., 2 SUBSTANTIVE CRIMINAL LAW § 13.2 (2d ed.) ("Under the general principles applicable to accomplice liability, there is no such thing as liability without fault."). The defendant's *subjective knowledge* that his actions would aid a criminal act is necessary to uphold a conviction based upon the theory of aiding and abetting. If the defendant mistakenly undertook his actions based upon the belief that he was assisting a lawful endeavor, he can not be guilty of aiding and abetting a criminal act.

In *Evans*, our Supreme Court reversed the defendant's conviction where there was no evidence the defendant knew that the two people who provided him a ride planned to rob a restaurant upon reaching their destination. *Evans*, 279 N.C. at 453-54, 183 S.E.2d at 544-45. Five or ten minutes prior to the robbery, the defendant entered a vehicle with the driver and a passenger for the sole purpose of receiving a ride. *Id.*, 279 N.C. at 450, 183 S.E.2d at 543. The two people in the car never informed defendant of their intention to commit a robbery and neither the driver nor the passenger discussed their plans regarding the robbery in defendant's presence. *Id.* The *Evans* Court reasoned that the defendant's "mere presence" at the scene of the crime during its commission was not sufficient to show his involvement in the crime. *Evans*, 279 N.C. at 453-54, 183 S.E.2d at 545.

In *Capps*, this Court reversed the defendant's conviction of aiding and abetting felonious breaking and entering a motor vehicle and felonious larceny. 77 N.C. App. at 403, 335 S.E.2d at 191. There was no evidence that the defendant knew his passenger was going to break into the trunk of a car and take items that did not belong to him. *Id.* This Court reasoned, "While the State's evidence does indicate the defendant was present at the scene of the crime, the State has failed to present substantial evidence that the defendant intended to aid [the codefendant] or communicated such intent to [the codefendant]." *Id.*, 77 N.C. App. at 402, 335 S.E.2d at 190. Finally, this Court held that "[a] defendant's mere presence at the scene of the crime does not make him guilty of felonious larceny even if he sympathizes with the criminal act and does nothing to prevent it." *Id.*

Our case law clearly establishes that aiding and abetting is a crime that involves an element of knowledge. When an offense contains an element of knowledge, mistake of fact is available as a defense. *See generally State v. Walker*, 35 N.C. App. 182, 241 S.E.2d 89

(1978) (trial court erred by not giving instruction on mistake of fact when defendant mistakenly abducted a child who he believed was his granddaughter); *State v. Lamson,* 75 N.C. App. 132, 330 S.E.2d 68 (1985) (error to not give instruction on mistake of fact when defendant tried to enter a house at night that he believed was the house where his friend was staying). "If there is evidence from which an inference can be drawn that the defendant committed the act without the criminal intent necessary, then the law with respect to that intent should be explained and applied to the evidence by the court." *State v. Connell,* 127 N.C. App. 685, 690-91, 493 S.E.2d 292, 295 (1997) (mistake of fact instruction should have been given when defendant inappropriately touched his girlfriend's daughter because he thought she was his girlfriend). "Any defense raised by the evidence is deemed a substantial feature of the case and requires an instruction." *State v. Hudgins,* 167 N.C. App. 705, 708, 606 S.E.2d 443, 446 (2005). Where there is sufficient evidence in a case to support an instruction on a defense, due process requires that the trial court instruct the jury on the defense. *See generally State v. Marshall,* 105 N.C. App. 518, 525, 414 S.E.2d 95, 99 (1992) (failure to give required instruction on defense of habitation violated defendant's due process rights). Failure to give the required instruction is an error of constitutional dimension and the defendant is presumed to have been prejudiced; the burden is upon the State to show beyond a reasonable doubt that the error was harmless. N.C. Gen. Stat. § 15A-1443(b) (2005); *Marshall,* 105 N.C. App. at 525, 414 S.E.2d at 99.

In this case, defendant's requested instruction was a correct statement of law and supported by the evidence. Although statutory rape is a strict liability crime, aiding and abetting statutory rape is not. *See People v. Wood,* 56 Cal. App. 431, 205 P. 698 (1922). In *Wood,* the California Court of Appeals affirmed defendant's conviction for aiding and abetting statutory rape. *Id.,* 56 Cal. App. at 433, 205 P. at 698. In affirming defendant's conviction, the Court conceded that although defendant did not have sexual intercourse with the victim, he procured a room for the victim and her assailant. *Id.,* 56 Cal. App. at 432, 205 P. at 698. The Court held, "[defendant] *knew the illegal purpose* for which the room was to be used and *knowingly both aided and abetted* [the assailant] in the commission of the crime[.]" *Id.* (emphasis added). Although the Court did not address the issue of strict liability in the crime of aiding and abetting statutory rape, the Court relied on an intent element in affirming defendant's conviction for aiding and abetting statutory rape. Moreover, strict liability crimes are disfavored. *See Staples v. United States,* 511

U.S. 600, 606, 128 L. Ed. 2d 608, 616 (1994) ("offenses that require no *mens rea* generally are disfavored"). Thus, the State was required to present evidence tending to show that defendant acted with knowledge that the girls were under the age of sixteen. Furthermore, defendant's requested instruction was supported by the evidence. Although Stephanie testified she told defendant her age, Detective Marsh testified that defendant stated during his interview that defendant did not know the victims' ages and that he thought both girls were over the age of eighteen. Therefore, we hold the evidence presented supported the jury instruction requested by the defendant and the trial court's failure to give the instruction, that should have been given, was error.

## V. Second-degree Kidnapping

[5] Defendant argues the trial court committed plain error by not defining the term "unlawfully" in the instructions to the jury on the charge of second-degree kidnapping. We disagree.

During trial, defense counsel did not request a definition of the term "unlawfully" when the court instructed the jury on the charge of second-degree kidnapping. Therefore, our review of whether the trial court erred is limited to plain error review. *See Odom, supra.*

In the instant case, defendant was charged with two counts of second-degree kidnapping pursuant to N.C. Gen. Stat. § 14-39 (2005). N.C. Gen. Stat. § 14-39 provides:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping . . . .

(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class C felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

In the instant case, the trial judge's jury instructions stated in relevant part:

Now, I charge that for you to find the defendant guilty of second-degree kidnapping the State must prove four things beyond a reasonable doubt. First, that the defendant unlawfully removed a person from one place to another. Second, that the person had not reached her sixteenth birthday and her parent/guardian did not consent to this removal. Consent obtained or induced by fraud or fear is not consent. Third, that the defendant removed the person for the reason of facilitating his or another person's commission of statutory rape. And fourth, that this removal was a separate, complete act independent of and apart from the statutory rape.

Defendant argues the trial court should have instructed the jury that defendant only unlawfully removed Stephanie and Rachelle if he knew the girls were under the age of sixteen and that they did not have their parents' consent to go to his house. However, N.C. Gen. Stat. § 14-39 does not require that a person must know the victim is under the age of sixteen in order to be convicted for the crime of second-degree kidnapping. Rather, our Supreme Court has held:

> the victim's age is not an essential element of the crime of kidnapping itself, but it is, instead, a factor which relates to the state's burden of proof in regard to consent. If the victim is shown to be under sixteen, the state has the burden of showing that he or she was unlawfully confined, restrained, or removed from one place to another without the consent of a parent or legal guardian. Otherwise, the state must prove that the action was taken without his or her own consent.

*State v. Hunter,* 299 N.C. 29, 40, 261 S.E.2d 189, 196 (1980).

Thus, pursuant to N.C. Gen. Stat. § 14-39, there is no requirement a person must know his or her victim is under the age of sixteen and was removed without the parent's consent in order to be convicted of second-degree kidnapping. We also note that here defendant is charged as the *principal* for second-degree kidnapping. However, in the charge of aiding and abetting statutory rape discussed *supra,* defendant was not charged as a principal for aiding and abetting statutory rape. Instead, defendant was charged with aiding and abetting the underlying crime of statutory rape which was committed by another person. Since defendant was charged as a principal for second-degree kidnapping, the State must only prove the elements provided under N.C. Gen. Stat. § 14-39. Therefore, since N.C. Gen. Stat. § 14-39 does not require that a person know the victim is under

the age of sixteen, we determine the trial court did not err in its jury instruction regarding the charge of second-degree kidnapping. This assignment of error is overruled.

## VI. Conclusion

After reviewing the entire record and transcript, we determine the trial court erred in admitting into evidence defendant's certified convictions for sexual battery and testimony concerning the alleged emotional impact defendant's prior misconduct had upon others. We also conclude the trial court erred in its instructions to the jury regarding the crime of aiding and abetting statutory rape. We determine the trial court did not commit error in admitting Daniel's testimony regarding defendant's prior conviction for sexual battery. We also hold the trial court did not commit error in its instructions to the jury concerning the crime of second-degree kidnapping. Therefore, we grant defendant a new trial on all convictions except for his conviction for second-degree kidnapping. In light of our holding, we need not address defendant's remaining assignments of error.

New Trial.

Judges HUNTER and TYSON concur.